UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EMMANUEL ETERE,

                                Plaintiff,                         **MEMORANDUM AND**
                                                                           **ORDER**
                    -against-                            CV 17-3113 (AYS)

NASSAU COUNTY, NASSAU COUNTY
POLICE DEPARTMENT, NASSAU COUTY
TAXI & LIMOUSINE COMMISSION,
PATRICK RYDER, GREGORY MAY,
OFFICER RYABN FAIS and OFFICER
SODANO

                                Defendants.
------------------------------------------------------------X
**SHIELDS, Magistrate Judge:**

       Plaintiff Emmanuel Etere ("Plaintiff" or "Etere"), is an Uber driver who commenced this action pursuant to 42 U.S.C. 1983 ("Section 1983") against Defendants alleging that their conduct in connection with the issuance of three tickets and search of the trip history on his Uber App violated the Constitution of the United States. Named as Defendants are the County of Nassau ("Nassau" or the "County"), the Nassau County Police Department (the "NCPD"), the Nassau County Tax and Limousine Commission (the "NCTLC"), Patrick Ryder, who is the Nassau County Police Commissioner ("Ryder" or "Commissioner Ryder"), Gregory May, who is the Commissioner of the NCTLC ("May" or "Commissioner May"), Nassau County Police Officer Ryan Fais ("Fais" or "Officer Fais") and NCTLC Officer Sodano ("Sodano" or "Officer Sodano"). All individual defendants are alleged to be sued in their individual and official capacities.

Presently before the Court is Defendants' motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons that follow the motion is granted in part and denied in part.

BACKGROUND

I.    The Parties

Although he appears pro se, Plaintiff is a law school graduate. See Am. Compl., herein appearing as Docket Entry ("DE") [49] at 12. At all times relevant to this matter, Plaintiff was an employee of New York City and self-employed as a part-time driver for the ride-share app Uber. Am. Compl. at 2. Uber matches drivers and prospective passengers over a smart phone app. Passengers pay for rides automatically through the app. By switching on his Uber app Plaintiff makes himself available to accept passengers by tapping on his phone. After accepting a proposed ride Plaintiff drives to the requested location to pick up the passenger and the drives to the requested destination. Id.

Defendant Nassau County is a municipal corporation. It is alleged through its agencies, including the NCPD, to enforce the law, and through the NCTLC to regulate taxis and "for hire" vehicles. Plaintiff alleges generally that "[s]enior officials" of the County and its agencies "are aware of and tolerate practices by subordinate employees, including those that are inconsistent with formal policies." These practices are alleged to be "widespread and deeply embedded in the culture of the department, [and] constitute unwritten departmental policies." Am. Compl. at 13. The County is alleged to be "responsible for the appointment, training, supervision and conduct of all NCPD and NCTLC personnel" including all of the individual defendants. Id.

The NCPD is a law enforcement agency that, in addition to being responsible for law enforcement is stated to be "responsible for appointment, training and conduct of all NCPD personnel, including Officer Fais. Am. Compl. at 14.

The NCTLC is stated to be a law enforcement agency, "responsible for the registration and enforcement of all laws regulating" taxis and for hire vehicles in the County. The NCTLC is stated to be responsible for the "appointment, training, supervision and conduct of all NCTLC personnel" including Officer Soldano. Am. Compl. at 15.

Defendant Ryder is the Nassau County Commissioner of Police. As such, he is alleged to be responsible for the management and control of the NCPD. Ryder is alleged to be aware of and to tolerate practices by employees that are "inconsistent with formal policies. Such practices are alleged to be widespread and deeply embedded in the culture" of the NCPD and "constitute unwritten policy." Am. Compl. at 16.

Defendant May is the Commissioner of the NCTLC. He is alleged to be responsible for the management and control of the NCTLC, which duties are alleged to include the "selection, supervision, promotion, training and discipline of all NCTLC officers." Plaintiff alleges, upon information and belief, that May "is provided on a daily basis with reports of regulation" of taxis and for hire vehicles in Nassau County. May is further alleged to be responsible for the conduct of his subordinate, Officer Sodano. Am. Compl. at 18.

Defendants Fais and Sodano are, as noted, officers of the NCPD and the NCTLC respectively. See Am. Compl. at 17; 19. The facts regarding their interactions with Plaintiff, as alleged in the Amended Complaint, are set forth below.

II.     The Tickets Issued to Plaintiff

The facts forming the basis of Plaintiff's amended complaint arise out of his separate and unrelated interactions with Officers Fais and Sodano. The interaction with Officer Fais took place on July 14, 2016 and resulted in the issuance of one ticket. The interaction with Officer Sodano took place on February 17, 2017 and resulted in the issuance of two tickets.

     A.     The July 14, 2016 Ticket

On July 14, 2016, Plaintiff was working as an Uber driver. The car he was driving at the time was leased from a New York City certified leasing company that was in compliance with all required state and city regulations. At approximately 7:15 P.M. on that date Plaintiff was pulled over on Hook Creek Boulevard in Queens County, New York. Am. Compl. at 20. Prior to being pulled over Plaintiff received and accept a request to pick up a passenger at a Target store in Green Acres Mall, which is located in Nassau County near the New York City border. While en route to the pickup location, Plaintiff's passenger communicated that she had left the mall and was instead at a Dunkin Donuts on Sunrise Highway by Hook Creek Boulevard in Queens County. Plaintiff picked up the passenger at the new location, and was then proceeding to Flushing, Queens. He states that as he was driving away with his passenger when he noticed a Nassau County Police Cruiser in his rear-view mirror with flashing lights, signaling Plaintiff to pull over.  Plaintiff complied, pulling over at the intersection of Hook Creek Boulevard and Sunrise Highway, in Queens County. Am. Compl. at 20.

The officer who pulled over Plaintiff was Officer Fais. Fais approached Plaintiff's car and asked for his license and registration, which Plaintiff produced. When asked for the reason he was pulled over Fais told Plaintiff that Plaintiff's license plate was illegally obscured by a

4

cover. After detaining Plaintiff for fifteen minutes Fais returned to Plaintiff's car and issued him a ticket for driving with a covered license plate (the "2016 Ticket"). Am. Compl. at 20.

After issuance of the ticket, Plaintiff was beginning to drive away when Fais asked Plaintiff to wait. Fais then asked Plaintiff to hand over his cell phone so that Fais could access Plaintiff's Uber trip history to find out if Plaintiff was illegally operating in Nassau County. Plaintiff told Fais that he was operating in Queens County - which is where his vehicle was located at the time when Fais pulled him over. Am. Compl. at 22. Plaintiff also told Fais that he had no right to access his cell phone. Fais then threatened Plaintiff with arrest for "obstruction of governmental administration" if he continued to refuse to hand over his cell phone. Plaintiff explained to Fais that to access the trip history Plaintiff would have to end his current trip - which would cause him to lose the fare - which Plaintiff was not willing to do. After Fais again threatened Plaintiff with arrest, Plaintiff handed over his cell phone. Fais ended the trip and proceeded to access and search through the trip history on Plaintiff's phone. Finding nothing incriminating in the phone, Fais handed it back to Plaintiff and Plaintiff left. He drove his passenger to her destination but was not paid in full for the trip.

On September 26, 2016, Plaintiff appeared at Nassau County Traffic Court to answer the 2016 Ticket. Plaintiff pleaded not guilty. He was offered a reduced fine, but declined the offer and requested a hearing. While waiting for his hearing Plaintiff received an affidavit sworn to by Fais stating that "I did observe [Plaintiff] operating a motor vehicle on public roadway" in disregard of "VTL (referring to the New York State Vehicle and Traffic Law) 4021 - Covered License Plate." DE 24. On May 1, 2018, Plaintiff made a second appearance on the 2016 Ticket. At that appearance, the ticket was dismissed. That dismissal followed the presentation of no evidence by the prosecution.

5

B.     The February 17, 2017 Tickets

On February 17, 2017 at 8:41 P.M. "plaintiff was sitting in his car alone and eating breakfast at the parking lot of Nordstrom Store, in Roosevelt Field Mall in Garden City, New York." Am. Compl. at 26. Garden City, New York is in Nassau County. Plaintiff states that he was in the parking lot, eating his breakfast, while waiting for the store to open so that he could "check out the clothing rack, in the store." Id. at 19; 26. While Plaintiff was sitting in his car he was "accosted" by Officer Sodano who asked Plaintiff for his license and registration. When Plaintiff asked Sodano if he had done anything wrong, Sodano said that he needed to investigate whether Plaintiff was picking up passengers in Nassau County without authorization, and asked Plaintiff for his license to operate in Nassau County. Plaintiff replied that he did not have such a permit. Id. at 26. Sodano then asked to access Plaintiff's trip history on his Uber app. Plaintiff told Officer Sodano that he needed a warrant to search Plaintiff's phone and that he would neither turn over the phone nor voluntarily consent to a search of its content. Sodano told Plaintiff that he did not need a warrant to access the trip history of a for-hire vehicle driver's cell phone in Nassau County. Plaintiff asked Sodano about the legal standard for searching a cell phone and Sodano replied that "any car with a New York City 'TLC' license plate was liable to be stopped anywhere in Nassau county, to investigate if the driver was picking up passengers in Nassau county without authorization." Id. Plaintiff reiterated that Sodano needed a warrant and that his position was inconsistent with the requirement for a warrantless search. Sodano threatened that the consequence of a refusal to hand over the cell phone in Nassau County would be "severe" including "the issuance of multiple tickets and impounding of plaintiff's vehicle." Id. Plaintiff said that he would not voluntarily consent to hand over his phone, but that he would hand it over. After Plaintiff handed his phone to Sodano with the Uber app opened to the trip

6

history page, Sodano scrolled through and searched the page. He then issued two tickets to Plaintiff which appear to address the same conduct. The separate tickets issued were for violation of a Nassau County Ordinance, and for violation of the NCTLC's Rules and Regulations. One ticket carried a $1500 fine, and the other carried a $250 fine (the 2017 Tickets").

On March 13, 2017, Plaintiff appeared at the Nassau County Taxi and Limousine Commission to answer the 2017 Tickets, pleading not guilty to both. Plaintiff refused an offer of a reduced fine and requested a hearing. The requested hearing was held on April 25, 2018 where Plaintiff argued that issuance of the tickets violated his Fourth Amendment constitutional rights. Plaintiff was found guilty of the charges in both tickets and was fined $600.00. Plaintiff has not paid that fine.

III.   Plaintiff's Claims

Plaintiff's complaint contains six causes of action. The first two claims are alleged pursuant to Section 1983 and arise out of issuance of the July 2016 Ticket. The third claim is alleged pursuant to Section 1983 and arises out of issuance of the February 2017 Tickets. The fourth and fifth claims are based upon state common law. The sixth claim is alleged pursuant to the New York State Constitution. Each claim is discussed in further detail below.

The First Claim is alleged against the County, the NCPD, Commissioner Ryder and Officer Fais. It states that these Defendants violated the Fourth and Fourteenth Amendments when Plaintiff was pulled over in Queens County in 2016 without probable cause or reasonable suspicion. In addition to stating that Fais lacked any cause for accessing his trip information Plaintiff alleges that, as a Nassau County police officer, Fais had no jurisdiction to issue a ticket within Queens County which is adjacent to Nassau County. Plaintiff alleges that Officer Fais

7

stopped Plaintiff in violation of his Fourth Amendment rights to be free from an unreasonable stop, search and seizure. Am. Compl. at 17.

The Second Claim is alleged against the County, the NCPD, Commissioner Ryder and Officer Fais. It states that these Defendants violated the Fourth and Fourteenth Amendments when Plaintiff's cell phone was searched without probable cause to believe that Plaintiff had committed a crime.

The Third Claim is alleged against the County, the NCTLC, Commissioner May and Officer Soldano. It states that these Defendants violated the Fourth and Fourteenth Amendments when Plaintiff was stopped and his cell phone was searched in connection with the February 2017 tickets.

The Fourth Claim is alleged against the County, the NCPD, Commissioner Ryder and Officer Fais. It sets forth a state law claim of malicious prosecution based on the issuance of the 2016 Ticket.

The Fifth Claim is alleged against the County, the NCPD, Commissioner Ryder and Officer Fais. It sets forth a state law claim of interference with contract. This claim alleges that defendants interfered with Plaintiff's contract to transport a passenger to her destination by forcing Plaintiff to end a trip on his Uber app on July 14, 2016, in the middle of an ongoing trip, in order to search Plaintiff's phone. The interruption, which took place after Plaintiff told Fais that he would not be paid, resulted in Plaintiff not being paid for the trip.

Plaintiff's Sixth Claim is alleged against all Defendants. It is alleged pursuant to Article 1, Section 12 of the New York State Constitution, which is stated to supplement the Fourth and Fourteenth Amendments to the United States Constitution, which secures Plaintiff's rights to be free from unreasonable search and seizure of his phone and electronic devices without a warrant.

Plaintiff seeks judgment on all claims in the amount of $2 million and a permanent injunction against defendants "to stop them from conducting illegal searches of all taxi and for hire vehicle drivers cell phones, to access their trip history or for any other untoward reasons." Am. Compl. at 52-53.

IV.     The Motion to Dismiss

Defendants seek dismissal of all claims. Dismissal of all claims against both the NCPD and the NCTLC is sought on the ground that neither of these defendants is a suable entity. Dismissal of all Federal Constitutional claims against Commissioners Ryder and May is sought on the ground that they lack the personal involvement necessary to hold them liable under Section 1983. Dismissal of any claim against Ryder is also sought on the ground that he did not assume the position of Commissioner until 2018 - well after the events that form the basis of Plaintiff's claims.

Dismissal on the merits of Plaintiff's Fourth and Fourteenth Amendment claims is sought on the ground that because the searches of Plaintiff's phone were allowed under the NCTLC Rules and Regulations in effect at the time of the searches they cannot be unlawful. Dismissal of Plaintiff's malicious prosecution claims (to the extent that they are based upon the tickets as to which Plaintiff was found guilty) is sought because Plaintiff cannot show the necessary favorable termination of proceedings required to state a claim. Dismissal of the malicious prosecution claim based upon issuance of the July 2016 Ticket (which did not result in a judgment of guilt) is sought on the ground that Officer Fais had probable cause to stop Plaintiff. Defendants similarly seek dismissal of Plaintiff's interference with contract claim because Officer Fais' probable cause to stop Plaintiff's car justified any interference with Plaintiff's contract with his passenger.

9

Finally, dismissal of Plaintiff's New York State Constitutional claims is sought on the same grounds as the Federal Constitutional claims.

## ANALYSIS

I.     Legal Standards: Rule 12(c)

 A motion under Rule 12(c) is properly granted where, upon consideration of the pleadings, in plaintiff's favor, plaintiff fails to state a claim upon which relief can be granted. The Court may consider those documents annexed to the complaint and those integral to that pleading, as well as those documents as to which judicial notice is appropriate. In the context of a Rule 12(c) motion a court may consider all undisputed allegations of fact, but may not weigh those facts. Where, as here, a defendant moves for judgment on the pleadings the Court may not consider the allegations of the answer in defendant's favor. Instead, the legal standard to be applied is the same as that which applies to motions under Rule 12(b)(6). See generally Lively v. WAFRA Investment Advisory Grp., Inc., 6 F.4th 293, 306 (2d Cir. 2021).

Application of these standards allows the Court to consider the allegations of the Amended Complaint as well as the tickets issued to Plaintiff. The Court takes judicial notice of the locations referred to in the Amended Complaint and described above, as well as decisions rendered in the state court proceedings that followed issuance of the three tickets that form the basis of the claims herein.

II.    The Motion is Granted with Respect to the Claims Against the NCPD and the NCTLC

Neither the NCPD nor the NCTLC is a suable entity. As administrative arms of a municipality, these entities do not possess a legal identity separate from the County and cannot therefore sue or be sued. See Davis v. Lynbrook Police Dep't., 224 F. Supp.2d 463, 477 (E.D.N.Y. 2002). Plaintiff's claims are properly pursued here against the Officers and the

municipality which in this case is the County of Nassau. Accordingly, the Court dismisses all claims against both the NCPD and the NCTLC.

III.     The Motion is Granted With Respect to Claims Against Defendants May and Ryder

Both Defendants May and Ryder are high ranking officials in the agencies that they supervise. As such, they can be liable for the claims herein only to the extent that Plaintiff can show their personal involvement in the Constitutional violation forming the basis of the Amended Complaint, i.e., their own actions in the allegedly unlawful stop of Plaintiff's car, and the search of his cell phone. See Tangreti v.Bachman, 983 F.3d 609 (2d Cir. 2020). Plaintiff's Amended Complaint contains only generalized allegations which do not rise to the level to allege a plausible claim of personal involvement. The Court therefore grants the motion to dismiss Defendants May and Ryder.  However, the dismissal is without prejudice in the event that discovery herein reveals evidence showing the personal involvement necessary to impose liability.

IV.     The Motion is Otherwise Denied

Defendants' motion to dismiss Plaintiff's claims on the merits hinges on the argument that Officers Fais and Soldano had probable cause to pull Plaintiff over and search the contents of his cell phone. They argue that the existence of the ordinances for which Plaintiff was ticketed gave Officers Fais and Sodano probable cause to stop Plaintiff's vehicle and search his cell phone as a matter of law. The Court disagrees. Traffic stops, such as the stops of Plaintiff's vehicle, which preceded the searches of his cell phone, are reasonable so long as the officer has probable cause to believe that a traffic infraction has occurred. Harper v. Town of Newburgh, 2020 WL 1140858, at *7 (S.D.N.Y. March 6, 2020). When an officer observes a traffic infraction - however minor - that officer is deemed to have probable cause to pull over the

11

vehicle committing the offense. Like the stop of his vehicle, the legality of the warrantless search of Plaintiff's cell phone turns on the question of probable cause. Whether or not such probable cause existed when the tickets were issued to Plaintiff turns on questions of fact that cannot be determined in the context of the present motion. See Brandon v. City of New York, 705 F. Supp. 2d 261, 270 (S.D.N.Y. 2013) (probable cause is question of fact precluding summary judgment).

Carniol v. NewYork State Taxi and Limousine Commission, 42 Misc.3d 199, 206 (N.Y. County), aff'd, 126 A.D.2d 409 (1st Dep't 2015), relied upon heavily by Defendants does not compel a different result. That case involved the search of a GPS device required to be installed in New York City taxis. The importance of collecting the limited geographic data in that case (for which there was a low, if any, expectation of privacy) was clear. Here, the governmental interest in searching Plaintiff's cell phone, the reasonableness of any expectation of privacy, and the facts that preceded the traffic stops at issue have yet to be determined. Presently, the stops of Plaintiff's vehicle and the searches of his cell phone without a warrant, as alleged in the Amended Complaint and presumed true, are distinguishable from the facts in Carniol. That case is therefore not controlling precedent in the context of the present motion to dismiss.

Additionally, the Court observes that Carniol pre-dates United States Supreme Court precedent establishing the requirement for a warrant to search the contents of a cell phone, which the Court presumes, (for purposes of this motion at least), was the type of search performed here. See Carpenter v. United States, 585 U.S. (2018). While Carpenter and its progeny may be relevant to a motion for summary judgment based on qualified immunity, those cases are not relevant here, where the lack of discovery makes consideration of that defense premature.

V.        Discovery Schedule and Deadlines

In view of the foregoing, the case shall proceed to discovery. In lieu of rulings usually made after an initial conference the Court enters the following discovery order and schedule. Within one week of the date of this order all parties shall identify witnesses to the events forming the basis of the Amended Complaint. To the extent known to Plaintiff he shall identify the passenger who was in his vehicle when it was stopped by Officer Fais. All parties shall produce any documents in their possession showing the location of Plaintiff's vehicle just prior to and at the time of the issuance of the tickets herein

Defendants shall produce all documents in their possession generated in connection with issuance of the 2016 and 2017 tickets at issue herein. Defendants shall also produce the ordinances and rules relied upon to stop Plaintiff's vehicle and search his cell phone, as well as all legislative history preceding the enactment of such measures. Defendants shall indicate, in a form of a sworn interrogatory response, whether the measures in effect at the time of the issuance of the tickets at issue herein are still in effect. In the event that such measures are no longer in effect, Defendants shall produce current legislation.

Plaintiff shall produce all documents supporting any position that he was not guilty of the conduct charged in the 2016 and/or 2017 Tickets. He shall also produce all documents supporting any claim that the vehicle he was driving at the time of the 2016 and 2017 Tickets was leased by a "certified leasing company, called American Lease" and that vehicle was in compliance with "all required state and city regulations" as set forth in the Amended Complaint. Plaintiff shall also produce documents supporting any claim of lost wages. To the extent that Plaintiff claims physical and/or emotional harm he shall produce, within two weeks of this order, medical authorizations directed to all relevant providers.

The documentary discovery described above is to be completed within 60 days of the date of this Memorandum and Order.  Any additional documentary discovery shall take place and precede depositions only upon a showing of good cause.

Depositions shall proceed in the following order: Plaintiff shall be deposed first. The depositions of Officers Fais and Sodano shall follow Plaintiff's deposition. Finally, Nassau County shall produce a representative witness with knowledge of the County and NCTLC ordinances at issue herein. In the event that no one witness possesses such knowledge, the County shall produce separate witnesses with knowledge. The parties may agree to depose Defendants in a different order. In any event, all discovery, including any expert discovery shall be complete within nine months of the date of this Memorandum and Order. The deadline for the making of any dispositive motion is hereby set at September 29, 2022.

## CONCLUSION

In view of the foregoing the motion to dismiss, appearing as Docket Entry 67 herein, is granted in part and denied in part.  The motion is granted with respect to dismissal of all claims against the NCPD and the NCTLC with prejudice. The motion is also granted with respect to dismissal of all claims against Commissioners Ryder and May without prejudice. The motion is, in all other respects, denied.

**SO ORDERED:**


Dated: Central Islip, New York
November 29, 2021                                            /s/       Anne. Y. Shields                
                                                                                 ANNE Y. SHIELDS
                                                                                 United States Magistrate Judge