# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF NEW YORK



**Brenna B. Mahoney**
Clerk of Court

**August Marziliano**
Chief Deputy, Brooklyn

**Michael Kramer**
Chief Deputy, Central Islip

**Theodore Roosevelt Federal Courthouse**
**Emanuel Cellar Federal Courthouse**
225 Cadman Plaza East
Brooklyn, NY 11201
(718) 613-2270

**Alfonse D'Amato Federal Courthouse**
100 Federal Plaza
Central Islip, NY 11722
(631) 712-6000
Pro Se: (631) 712-6060

Date: 8/30/22
Re: 17-CV-3113(AYS)

Dear *pro se* litigant:

The enclosed ___document___ is/are being returned without docketing or consideration for the following reason(s):

( )   The docket number and/or judges' initials are incorrect or missing.

( )   Your signature is required on all papers filed with the Court. Please sign wherever an "X" appears.

( )   These papers appear to be intended for another court or agency.

( )   Papers cannot be filed without indicating that they have been served on all parties in your action, or their attorneys. This office *will not* forward copies of your papers to other parties or their counsel. An affirmation of service form is enclosed.

( )   Your papers do not meet the minimum requirements for:
    ( )   Legibility: please type or print clearly.
    ( )   Language: only <u>English</u> is acceptable.
    ( )   Form or Content: See forms/instructions enclosed.
    ( )   Please indicate the documents you served on your affirmation of service.
    ( )   Other:

( )   This Court will only accept papers on 81/2 by 11 paper. Note that this does not include exhibits.
( )   Pursuant to Local Civil Rule 5.1, discovery materials are not filed with the Court except by Order of the Court.

( )   Your <u>Notice of Appeal</u> has been processed, and your case is closed. Your papers should be directed to:

    United States Court of Appeals for the Second Circuit
    Thurgood Marshall U. S. Courthouse
    40 Foley Square
    New York, NY 10007

( )   Our records indicate that you are represented by an attorney. As such, you may not file papers or communicate directly with the Court. Please refer this matter to your attorney.

( )   The Court cannot act on your submission(s). To the extent that it is your intent to start a new action, or to file a motion, please request the appropriate form(s) from our website or from our office.

(✓)   <u>Other:</u> Please see the attached order which notes this should be served and not filed until fully briefed.

By: J. Grady

SUSPECTED

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 26 2022   ★

LONG ISLAND OFFICE

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF NEW YORK

_____X

EMMANUEL ETERE

**Plaintiff**

V                                                    17-CV-03113 (AYS)

NASSAU COUNTY, NASSAU COUNTY

POLICE DEPARTMENT, NASSAU COUNTY

TAXI & LIMOUSINE COMMISSION, GREGORY

MAY, OFFICER RYAN FAIS, OFFICER SODANO

**Defendants**

_____X

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Emmanuel Etere hereby moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules of the U. S. District Court for the Eastern District of New York.

For the reasons fully set forth in the accompanying memorandum of law, Plaintiff is entitled to summary judgment as a matter of law. Defendants have willfully and maliciously violated Plaintiff's Fourth Amendment and Fourteenth Amendment constitutional rights. Defendants also interfered with Plaintiff's contract to transport a paying passenger to her destination, they maliciously prosecuted Plaintiff in Nassau County Traffic Court, they illegally conducted law enforcement activities to violate Plaintiff's constitutional rights in a place, where they had no operational authority and they also violated Plaintiff's constitutional rights under

Article 1 Section 12 of the constitution of the State of New York, which supplements the Fourth Amendment to the constitution of the United States.

Accordingly, Plaintiff respectfully requests this Court to grant his Motion for Summary Judgment and issue an order for money damages, injunctive relief plus costs and expenses of this action against the Defendants.

Respectfully submitted,

Emmanuel Etere (Plaintiff Pro Se)

430 Spur Drive North

Bay Shore, NY 11706

Tel : 718-807-1871

CC: Ralph Reissman

Defendants' Attorney

430 Spur Drive North

Bay Shore, NY 11706

# LIST OF AUTHORITIES

1. Winegrad v New York Univ. Med. Center, 64 N. Y. 2d 851

2. Zuckerman v City of New York, 49 N. Y. 2d 557, 562

3. MSF Holding Ltd v Fiduciary Trust Co., Int'l, 443 F. Supp. 2d 285, 305 (S. D. N. Y. 2006)

4. U. S. Underwriters Ins. Co v Zeugma Corp. No 97 – CW - 8031 1998 WL 633679 at 2

5. Wilson v Kitoe, 337 F. 3d 392, 403 (4th Circuit)

6. Smith v Tolley, 960 F. Supp. 977, 994 (1997)

7. Riley v California, 573 U. S. 373

8. United States v Wurie, 728 F. 3d 1 (2013)

9. United States v McCarthy, 672 F. Supp. 2d 1085 (D. Haw. 2009)

10. Delaware v Prouse, 440 U. S. 648

11. Loewer's Gambrinus Brewing Co. v Lithanauer, 73 N. Y. Supp. 947 (1901)

12. White Plains Coat & Apron Co. v Cintas Corp., 8 N. Y. 3d 422

13. Accord Rose v Different Twist Pretzel, Inc., 123 A. D. 3d 897, 898

14. Nardone v United States, 308 U. S. 338 (1939)

15. United States v Brignoni-Ponce, 422 U. S. 873 (1975)

16. Gratton v Vadney, 55 Misc. 3d 1208(A), 57 N. Y. S. 3d 675

17. Hazzard v Flurry, 120 N. Y. 223

18. People v Belton, 55 N. Y. 2d 49, 57

19. People v Hicks, 38 N. Y. 2d 90, 92

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

———————————————————————X

EMMANUEL ETERE

        **Plaintiff**

    V                                  **17-CV-03113 (AYS)**

NASSAU COUNTY, NASSAU COUNTY

POLICE DEPARTMENT, NASSAU COUNTY

TAXI & LIMOUSINE COMMISSION, GREGORY

MAY, OFFICER RYAN FAIS, OFFICER SODANO

        **Defendants**

———————————————————————X


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Emmanuel Etere respectfully submits this Memorandum of Law in support of his Motion for an order pursuant to CPLR 3212 and awarding money judgment, injunctive relief plus costs and expenses against the defendants.

### PRELIMINARY STATEMENT

Plaintiff, Emmanuel Etere brought this civil rights action on May 23, 2017, for money damages and injunctive relief to vindicate his constitutional rights and to redress defendants' violation of his civil rights under 42 USCA 1983. This action is also brought for violation of Plaintiff's Fourth Amendment right, to be free from unreasonable stop, search and seizure and for violation of his Fourteenth Amendment due process right by Nassau County, Nassau County Taxi

1

and Limousine Commission, Nassau County Police Department, Gregory May, Officer Ryan Fais and Officer Sodano.

Plaintiff, Emmanuel Etere was working part-time as a Uber Driver, when he was illegally stopped by defendants on July 14, 2016 on Hook Creek Road, in Queens County of New York City without any probable cause. His cell phone was searched and his Uber trip was abruptly ended by the defendants while conveying a passenger to her destination and Plaintiff was issued a bogus traffic violation ticket, allegedly for "Covered License Plate", which was later dismissed in Traffic Court. Again, on a different occasion, on February 17, 2017, while parked in a public parking lot at Roosevelt Field Mall, in Nassau County in New York State, Plaintiff was accosted by Defendant, Officer Sodano without any probable cause. His cell phone was searched without consent, and he was issued two bogus tickets again.

This action is also brought as a supplemental state claim for interference with contract in accordance with the laws of the State of New York, for malicious prosecution and violation of Plaintiff's civil right under Article 1, Section 12, of the constitution of the State of New York.

This case has seen several attempts by the Defendants to undermine the case, the last being a filing by the Defendants under F. R. C. P. 12 (c) for Judgment on the Pleadings on November 16, 2021. Plaintiff filed an Opposition to Defendants' Motion for Judgment on the Pleadings. The Court granted the motion in part and denied it in part. Pertinently, the Court disagreed with the Defendants that they had probable cause to stop Plaintiff's vehicle and search Plaintiff's cell phone and the Court allowed discovery to proceed.

## Legal Standard for Summary Judgment Motion

The proponent of a Summary Judgment motion must make prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact. See *Winegrad v New York Univ. Med. Center,* 64 NY 2d 851; *Zuckerman v City of New York*, 49 NY 2d 557, 562. See also *MSF Holding Ltd v Fiduciary Trust Co. Int'l.*, 435 F. Supp. 2d 285, 305 (S. D. N. Y. 2006). "Summary judgment

2

is appropriate where all facts are undisputed and only question of law remain to be decided." See *U. S. Underwriters Ins. Co. v Zeugma Corp.* No 97 – CW –8031 1998 WL 633679 at 2.

Failure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers. See *Winegrad v New York Univ. Med. Center*, Supra at P. 853. Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which requires a trial of the action. See *Zuckerman v City of New York*, Supra at P. 562.

## Argument

### 1.

### Plaintiff is Entitled to Summary Judgment As a Matter of Law Because Defendants Had No Probable Cause to Stop Plaintiff and No Defense to Violation of Plaintiff's Fourth Amendment Right, to be Free from Unreasonable Stop, Search and Seizure.

The Fourth Amendment to the constitution of the United States requires police to have probable cause to stop a vehicle, when the Driver of the vehicle has committed a traffic infraction which the Police Officer closely witnessed. See *Wilson v Kittoe*, 337 F. 3d 392, 403 (4th Cir.). Furthermore, probable cause exists if at the time of the stop and arrest, the facts and circumstances within the Officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing a crime. See *Smith v Tolley*, 960 F. Supp. 977, 994 (1997).

In this case, the defendants had no probable cause when they stopped Plaintiff's vehicle in both incidents of July 14, 2016, involving defendant Officer Ryan Fais and in the incident of February 17, 2017, involving Officer Sodano. Defendants have argued in their previously filed Motion to Dismiss under F. R. C. P. 12 (C), that they did not need probable cause to stop Plaintiff's vehicle when they did. To support their argument, they filed an obscure local ordinance No. 155 – 2014, which purports to waive the requirement of probable cause in order to stop a vehicle driven by a FHV (For Hire Vehicle) Driver. Subsequently, defendants in their answer to the Honorable Judge's interrogatory No. 3, have admitted that this local ordinance, which purportedly empowered them to stop FHV Drivers without probable cause has been

3

repealed. According to the defendants, *"the measures in effect at the time of the issuance of the tickets to plaintiff at issue herein, tickets issued July 14, 2016, and February 17, 2017, are no longer in effect. The current legislation governing For-Hire-Vehicles in New York State is the New York State Vehicle and Traffic Law Section 44-B."* Any claim of empowerment by any local ordinance to stop vehicles without any probable cause, which contravenes the Fourth Amendment to the U. S. constitution is ultra vires. As it is, New York Vehicle and Traffic Law Section 44-B does not empower defendants to stop FHV Drivers without probable cause. The defendants never had any power to stop Plaintiff's vehicle before the repeal of their local ordinance and under the current New York State Vehicle and Traffic Law Section 44-B.

Furthermore, apart from the fact that the law does not support the defendants' claim that they were empowered to stop FHV vehicles without probable cause, the only "evidence" filed by the defendants to support their claim that they purportedly stopped Plaintiff's vehicle legally was the bogus affidavit filed by Defendant Ryan Fais. (**Exhibit 1**- Ryan Fais' Affidavit), in which he swore that he saw Plaintiff's license plate covered. This is a bare-faced lie. Plaintiff's license plate was never covered to obstruct visibility of the plate numbers and letters (See **Exhibit 2**- Plaintiff's License Plate). Plaintiff's license Plate was encased in a license plate holder, which is also visible around the license plate of millions of vehicles driving all over New York State and the United States (See **Exhibit 3**- License Plate Holder). Plaintiff's License Plate was captured by red light camera and a ticket was issued (See **Exhibit 4**- Red Light Camera Violation). This shows that the license plate was never covered and remained visible to the naked eye and to remotelylocated electronic cameras on the roads. Plaintiff's vehicle was leased from a car leasing company called "American Lease" and they have supported Plaintiff's claim that the vehicle he was driving complied with all New York City and New York State laws, to be on the road lawfully (See **Exhibit 5** - Letter from American Lease). Thus, the evidence here establishes that the defendants had no probable cause when they stopped Plaintiff's vehicle and they have no defense to stopping Plaintiff's vehicle without probable cause.

**Plaintiff is Entitled to Summary Judgment As a Matter of Law Because Defendants Have No Legal Defense to Search Plaintiff's Cell Phone Without a Warrant.**

It was routine and all in a day's work for defendants to stop and search citizens' vehicle, whenever possible. Plaintiff was not the only victim, whose Fourth Amendment right was violated by the defendants. There had been several complaints by FHV Drivers and others against defendant Officer Sodano, for stopping vehicles without probable cause (See **Exhibit 6** – Complaints against Officer Sodano), to conduct searches.

In *Riley v California* (573 U. S. 373) and in *United States v Wurie* (728 F. 3d 1 (2013) ), the Supreme Court of the United States held that police require a warrant to search the cell phone of a person who is stopped or arrested on suspicion of committing a crime. In *Wurie* supra, the Supreme Court added that incident to an arrest exception does not extend to a cell phone.

In this case, the defendants admitted searching Plaintiff's cell phone without a warrant (See **Exhibit 7** – Answer to Plaintiff's Interrogatories. P. 7). There are no legal reasons for defendants to demand to search Plaintiff's cell phone, in the two encounters Plaintiff had with the defendants. Defendants argued in their answer to Plaintiff's Amended Complaint and in other filings that an administrative and regulatory scheme, which they were conducting when they stopped Plaintiff's vehicle waived the requirement to obtain a warrant to search Plaintiff's phone. This is false. There are established precedents that hold that administrative searches and regulatory schemes are also subject to Fourth Amendment requirement of probable cause. The Supreme Court of the United States held in *United States v McCarthy*, 672 F. Supp. 2d 1085 (D. Haw.2009), that administrative and regulatory schemes require probable cause. Also see *Delaware v Prouse*, 440 U. S. 648.

In their last Motion to Dismiss under F. R. C. P. Rule 12 (C) for Judgement on the Pleadings, the defendant's argument that they were not required to have probable cause before stopping and searching plaintiff's cell phone was rejected by the Court. The Court held that "*when an Officer observes a traffic infraction – however minor – that Officer is deemed*

to have probable cause to pull over the vehicle committing the offense. *Like the stop of his vehicle, the legality of the warrantless search of Plaintiff's cell phone turns on the question of probable cause"*. (See Page 11 – 12 of Honorable Judge Anne Shield's Judgment denying in part Defendant's Motion for Judgment on the Pleadings). The defendants require probable cause to search Plaintiff's cell phone. Their warrantless search of Plaintiff's cell phone without probable cause is a violation of Plaintiff's Fourth Amendment protection from unreasonable stop, search and seizure and Fourteenth Amendment due process rights.

3

**Plaintiff is Entitled to Summary Judgment As a Matter of Law Because Defendants Have Admitted to Conducting a Fourth Amendment Violation of Plaintiff's Right in Queens County of New York City Where They Had No Operational Jurisdiction**

In Plaintiff's Amended Complaint, he stated that "Plaintiff was participating in the on-demand economy as a part-time Uber Taxi Driver, when he was stopped illegally on Hook Creek Road ----- --- ---" (See Pg 1 – Nature of Action in Amended Complaint). Hook Creek Road is in Queens County of New York City. The Defendants had no operational authority to conduct law enforcement operation in New York City. Only the New York Police Department (N. Y. P. D.) has legal authority granted by the state of New York to conduct law enforcement operations in New York City, not Officers of the Nassau County Police Department (N. C. P. D.). (See New York State Criminal Procedure Law. Article 2, Section 1. 20).

In Defendants' answer to Plaintiff's Interrogatory Number 2, where Plaintiff asked if Defendants stopped Plaintiff and conducted stop and search on him at Hook Creek Road in Queens, Defendants answered in the affirmative. The Defendants are clearly wrong to conduct law enforcement activities in Queens County of New York City, where they had no authority to do so.

The Courts have followed the common law principle of limited territorial jurisdiction for local law enforcement officers. (See *Loewer's Gambrinus Brewing Co.*

*v Lithauer*, 73 N. Y. Supp. 947 (1901)). Thus, by conducting illegal law enforcement activities in New York City, and admitting it, the Defendants have violated Plaintiff's Fourth and Fourteenth Amendment right to be free from unreasonable stop, search and seizure. Defendants have also admitted to searching Plaintiff's cell phone by defendant Officer Sodano, when Plaintiff was sitting in his car. Defendants argue that they did not need probable cause to demand to search the cell phone of a FHV Driver. This is totally wrong and a clear violation of Fourth Amendment right and established federal laws and court precedents.

**4**

**Plaintiff is Entitled to Summary Judgment As a Matter of Law for Defendants' Interference with Contract Because Defendants Egregiously Stopped Plaintiff's Vehicle Without Any Probable Cause, Ended His Uber Trip In order to Access His Phone for His Trip History.**

Plaintiff was driving a passenger to her destination when he was illegally stopped by the defendants and had his trip ended. According to Plaintiff's trip history for July 14, 2016, Plaintiff was driving a passenger from Sunrise Highway to Liberty Avenue and 134th Street, South Richmond Hill, NY 11419 (See Exhibit 8 – Copy of Trip History). By stopping Plaintiff illegally and ending his trip, in order to access his trip history on his cell phone, the defendants have intentionally interfered with plaintiff's contract to transport passenger to her destination, which resulted in loss of commensurate fare (See **Exhibit 9** – Receipt for Fare).

In New York State, the elements of the Tort of Intentional Interference with Contract are as follows:

a)  The existence of a valid contract with a third party. Here there was a contract to transport passenger to her destination, as Plaintiff was working as a Uber Cab driver on said day of July 14, 2016.

b)  The defendant's knowledge of that contract. Here defendant knew that there was a passenger in the car, when he stopped plaintiff's car. Defendant asked Plaintiff to hand over his cell phone, to access it for his trip history. Plaintiff clearly informed defendant that the only way to access his trip history was to end the current trip, and that he was not

c)  willing to do this. Without Plaintiff's consent, defendant ended plaintiff's trip (See Amended Complaint on No 17 – 18).

7

d) Defendant's Intentional and Improper Procuring of a Breach. Here, defendants intentionally and improperly procured a breach of contract by stopping Plaintiff's car illegally and without probable cause, and illegally ending Plaintiff's trip, while he was driving passenger to her destination. (See Complaint on No 16 – 18).

e) Damages. Here by ending Plaintiff's trip abruptly and without justification, a fare that was to earn plaintiff $25.00, resulted into a loss of commensurate fare (See Exhibit 7 – Receipt from Trip). Because all the above elements are present in this case, plaintiff is entitled to damages in this regard. See *White Plains Coat & Apron Co. v Cintas Corp.* 8 N. Y. 3d 422; *Accord Rose v Different Twist Pretzel, Inc.* 123 A. D. 3d 897, 898.

In the case involving Officer Sodano, the Defendants argue that Plaintiff was convicted of two ticket violations and that Plaintiff's claim of malicious prosecution was without any legal basis. This argument is wrong, because the issuing of the two bogus tickets came about by illegally searching Plaintiff's cell phone to view his trip history. It is the evidence of a poisonous tree and the fruit of an illegal search cannot be validly used against a party, accused of a crime. This evidence had been procured by violation of Plaintiff's Fourth and Fourteenth Amendment rights. Evidence is inadmissible in Court if it was derived from evidence that was illegally obtained. See *Nardone v United States*, 308 U. S. 338 (1939); *United States v Brignoni-Ponce*, 422 U. S. 873 (1975).

5

## Plaintiff is Entitled to Summary Judgment As a Matter of Law Because He was Maliciously Prosecuted in Traffic Court by The Defendants.

By prosecuting such illegal case against Plaintiff, at the Defendants' Nassau County Traffic Court, the defendants have maliciously prosecuted Plaintiff, in violation of New York State law. The elements for malicious prosecution of Plaintiff in New York State are clear and very well established in this case. They are as follows:

1. The commencement or continuation of a court proceeding by the defendants against Plaintiff.

2. The termination of the proceeding in favor of the accused.

3. The absence of probable cause for the court proceeding.

4. Actual malice. See *Gratton v Vadney*, 55 Misc. 3d 1208 (A); 57 N. Y. S. 3d 675.

In this case, the defendants stopped Plaintiff in New York City, where they had no operational jurisdiction. They proceeded to falsely claim that defendant was driving around with a "covered license plate" in New York City, just for the purpose of stopping his car, to access his cell phone, and to check his Uber app for purported operation in Nassau County. They issued a fraudulent ticket, in the face of the fact, that millions of motorists also have a license plate covers around their license plate. It is not illegal to have a license plate cover in New York State. No law prohibits it, if it does not obstruct the letters and numbers on the license plate with glass or synthetic materials or substances. Millions of New York State drivers also have license plate cover/holders around their license plate, which advertises the car dealer's information. Defendants made plaintiff to appear in Nassau County Traffic Court, and their fraudulent case of "driving with a covered license plate" was dismissed in Plaintiff's favor. This was a gross abuse of power and Court process, and the defendants must answer for their malicious acts. The defendants' act is indeed malicious. In New York State, the existence of malice for malicious prosecution is a question of fact. See *Hazzard v Flurry*, 120 N. Y. 223. The facts in this case affirms the accusation of malicious prosecution against the defendants.

**6.**

**Plaintiff is Entitled to Summary Judgment Because The Defendants Clearly Violated Plaintiff's Constitutional Right to Be Free From Unreasonable Search and Seizure Under Article 1 Section 12 of The New York State Constitution.**

Article 1 Section 12 of the Constitution of the State of New York states in pertinent parts: "............*The right of the people to be secure against unreasonable interception of telephone and telegraph communications shall not be violated and an ex parte order or*

9

warrants shall issue only upon oath or affirmation that there is reasonable ground to believe that evidence of crime may be thus obtained and identifying the particular means of communication and particularly describing the person or persons whose communications are to be intercepted and the purpose thereof." The New York State constitution supplements the constitution of the United States and cedes supremacy to it. In _People v Belton_, 55 N. Y. 2d 49, 57, the New York State constitutional provision " _protects the privacy interests of the people of our state, not only in their persons, but in their homes, papers and effects as well against the unfettered discretion of government officials to search and seize._" See _People v Belton_, Supra at 52. "_Both state and federal constitutions protect citizens' privacy from unwarranted intrusion_". See _People v Hicks_, 38 N. Y. 2d 90, 92.

The above quotation from New York State constitution clearly establishes that a "_warrant shall issue only upon oath and affirmation that there is reasonable ground to believe that evidence may thus be obtained - - - - - ._" (Article 1 Section 12 of New York State Constitution). The New York State constitution requires Defendants to have a warrant before searching Plaintiff's cell phone. Plaintiff has reasonable expectation of privacy in his cell phone and by not obtaining a warrant before searching Plaintiff's cell phone, Defendants have clearly violated Plaintiff's constitutional right under Article 1 Section 12 of the New York State constitution.

## Conclusion

For the foregoing reasons, Plaintiff respectfully requests the Court to grant summary judgment against the Defendants for violating Plaintiff's Fourth Amendment, Fourteenth Amendment rights; for interfering with Plaintiff's contract to transport a paying passenger to her destination, for malicious prosecution and for violation of Article 1, Section 12 of the New York State constitution, which supplements the Fourth Amendment to the U. S. constitution.

Dated: Bay Shore, New York

August 25, 2022

Respectfully submitted.

Emmanuel Etere (Pro Se)

430 Spur Drive North

Bay Shore, NY 11706

Tel: 718-807-1871

CC: Ralph Reissman (Attorney for Defendants)

1 West Street, Mineola, NY 11501

# EXHIBIT 1

# POLICE DEPARTMENT, COUNTY OF NASSAU, NEW YORK
## SUPPORTING DEPOSITION TO SUPPORT SIMPLIFIED TRAFFIC INFORMATION PDCN 93 - REV 8/05
### C.P.L. Section 100.25, Subdivision 2

**INSTRUCTIONS** Prepare 3 copies, forward original and PDCN 70 to Court Liaison Office, copy to either the attorney or defendant and a copy and PDCN 70 are retained in the command. All copies must have an original signature.

| SERIAL NO. | UTT NO. | PLATE NO. | LICENSE NO. | LICENSE CLASS | DATE OF REPORT |
|---|---|---|---|---|---|
| 9353 | F3110050G8 | | 256068069 | D | 09/05/2016 |

STATE OF NEW YORK )
             ) ss
COUNTY OF NASSAU )

⦿ Nassau County District Court/TPVA

◯ Other Court: Name _____

Address _____

### THE PEOPLE OF THE STATE OF NEW YORK
### AGAINST

DEFENDANT <u>Etere, Emmanuel U.</u>     D.O.B. <u>6/25/1969</u>

I, <u>P.O.</u> , <u>Fais, R.</u> , <u>936</u> a police officer of the County of
   RANK                  NAME           SHIELD NO.

Nassau, New York, pursuant to an order of the court to file a supporting deposition with the court, and serve a copy thereof on the defendant, state, that I am a police officer and the complainant in the captioned proceeding, and I further allege on my personal knowledge and observation the following facts that provide reasonable cause to believe that the defendant committed the offense(s) charged.

The traffic violation was committed by the defendant on the <u>14th</u> day of <u>July</u> , 20<u>16</u>

at <u>7:46</u>   ◯A.M.    ⦿P.M.   at the location of <u>N/B Green Acres Road West</u>

in the ⦿Town ◯Village ◯Hamlet of <u>Hempstead</u> Nassau County, New York

did violate <u>See Below</u> of the <u>Vehicle and Traffic Law</u> .
             SECTION                 LAW

To Wit: I did observe the above defendant <u>operating a motor vehicle on a public roadway and disregard the following Vehicle</u>

<u>and Traffic Law infraction: F3110050G8, VTL 4021 Covered Plate.</u>

_____

_____

_____

_____

_____

_____

A copy of this deposition is being separately served on the defendant.

## FALSE STATEMENTS MADE HEREIN ARE PUNISHABLE AS A CLASS A MISDEMEANOR
## PURSUANT TO SECTION 210.45 OF THE PENAL LAW OF THE STATE OF NEW YORK

<u>P.O.</u>     _____     <u>09/05/2016</u>
RANK               SIGNATURE              DATE

# EXHIBIT 2



# EXHIBIT 3



# EXHIBIT 4



**NEW YORK CITY** New York City Department of Finance
**School Zone Camera Unit**
**PO Box 3641**
**Church Street Station New York, NY 10008-3641**

 

Department of Finance

# NOTICE OF LIABILITY

View your images online at
www.ViolationInfo.com

**NOTICE #:** 4622608790
**PIN:** 8625

THE CITY OF NEW YORK
VS
**EMMANUEL ETERE**
**430 SPUR DRIVE NORTH**
**BAYSHORE, NY 11706**

**PLEASE TAKE NOTE:** Because the driver of the photographed vehicle, has been observed speeding in a school speed zone (in violation of the New York Vehicle and Traffic Law 1180-b), you are liable to pay a fine for the amount shown. This amount is due within 30 days of the date of this Notice of Liability (NOL).

The vehicle was traveling at a speed of more than ten miles per hour above the posted speed limit in effect within the school speed zone.

One or more photographs evidencing the plate and violation are shown. Please see the reverse for further instructions.

**ISSUE DATE:** 09/14/2016  **DUE DATE:** 10/14/2016

| VIOLATION DATE | VIOLATION TIME | FINE AMOUNT |
|---|---|---|
| 07/29/2016 | 12:27:44PM | $50.00 |
| LOCATION NB BAYCHESTER AVE @ CRAWFORD AVE | | |
| SPEED | | POSTED SPEED |
| 39 | | 25 |

**There are no points associated with this Notice.**

  

Make your check or money order payable to the
**NYC Department of Finance**

**DO NOT MAIL CASH**
Write on the front of your payment
1) The 10 digit Notice Number.
2) Your Plate Number.
3) Your State of Registration.
4) Your Plate Type.

Insert this tear off coupon in the enclosed envelope.

**NYC DEPARTMENT OF FINANCE**
**SCHOOL ZONE CAMERA UNIT**
**PO BOX 3641**
**CHURCH STREET STATION**
**NEW YORK, NEW YORK 10008-3641**

Detach and mail this coupon with your payment



| NAME EMMANUEL ETERE | | | AMOUNT DUE $50.00 |
|---|---|---|---|
| NOTICE NUMBER 4622608790 | VERSION 2 | ISSUED 09/14/2016 | DUE DATE 10/14/2016 |
| PLATE NUMBER T525425C | STATE NY | TYPE (TAXI) OMNIBUS | |

# EXHIBIT 5

# EZ LIVERY LEASING LLC
### 1165 Ogden Ave.
### Bronx,NY 10452
### Telephone: 718-590-0000

January 06, 2022

To Whom It May Concern:

This letter is to confirm that the vehicle PLATE# T525425C, driven by EMMANUEL U ETERE which he was renting with us in 2016. This vehicle Complies with NYCTLC and NYCDMV requirements, to be driving in the streets which is confirmed on the driver's contract. If you have any other questions you can contact us at the number above.

Thank you,

Neil Miller

This lease agreement is collaterally assigned to Israel Discount Bank of New York, as Agent ("Agent"), pursuant to the Credit and Security Agreement among EZ, Agent and the other parties signatory thereto.

# TERMS AND CONDITIONS OF AUTOMOBILE LEASE AGREEMENT

LET ALL THOES PRESENT KNOW THAT this contract agreement by and between **EZ Livery Leasing LLC.** with its principal office located at 1165 Ogden Ave. Bronx, NY 10452 (Hereinafter referred to as EZ) and ETERE EMMANUEL residing at: 430 SPUR DR N BAYSHORE NY 11706 (hereinafter referred to as Lessee) shall be binding and have legal effect upon execution of same.
EZ agrees to Lease to Lessee a 2015 NISSAN Vin# 1N4AL3AP5FC216478.
The term of the Lease agreement shall be for a period of 182 weeks, Lessee will pay a total of $300.00 per week. **Payment breakdown:** Lease payment of $95.74 to cover lease and sales tax. "Insurance charge" of $204.26 to cover: Liability insurance, collision insurance, TLC & DMV registration for the duration of the lease
First payment and down payment of  is due the day this lease is signed.

## Uber Pricing
This leasing program is discounted for Uber partner UUID# 0b3f7dcc-1359-44b7-868a-bca2dafd2069 If the lessee is deactivated from the "Uber Network", pricing will revert to EZ's standard rate at this time.

## Insurance
Automobile liability insurance coverage: Bodily Injury Protection at least $100,000 per person and $300,000 per occurrence, Property Damage Liability Protection - $50,000.
Collision insurance. Car to be repaired by EZ authorized facility only. Driver to pay first $1000
Cost of insurance is covered under this agreement for the term of this agreement.
Lessee must be acceptable as a driver by EZ's insurance company for the full term of this agreement.
In the event that EZ's insurance company *increase EZ's premium, EZ reserve* the right to pass the increase to the lessee. If Lessee fails to comply with all of the terms of this agreement, the coverages provided herein will be void. No insurance coverage is provided under this agreement if, when the claim arises, the vehicle is being operated by an unauthorized driver. Lessee agrees and acknowledges that the insurance provided by EZ under this agreement is limited in coverage and scope and is aware of the terms thereof.

## Registration & TLC
EZ will register the vehicle with NYSDMV and NYCTLC (cost of registration & TLC Diamond are covered under this agreement for the term of this agreement).

## Maintenance
Lessee shall be responsible for all fuel and maintenance to the vehicle, including replacement of parts, tires, brakes, hoses, plugs, or any other repairs. In the event of an accident, theft, or other loss arising from or in connection with the operation of the vehicle, Lessee must provide written notice of the facts of the incident to EZ as soon as feasible (but no later than 24 hours) after the incident. Lessee agrees to provide prompt notice to EZ if any claim, demand, suit, or process is made upon Lessee. Lessee agrees to cooperate in the defense or pursuit of any claim on behalf of EZ.

## Right to Operate
Lessee will not permit any other individual to operate said vehicle without the written consent of EZ.

## Responsibility
Lessee is a private operator of this vehicle and does not work for EZ. Lessee is responsible for his own worker compensation and disability insurance. Lessee is responsible to defend and pay for any violation or fine (TLC, DMV, traffic, parking or any other violation not named specifically). In the event that EZ had to resolve and pay those violations, lawyer fee will be added to the cost of the violation, and the total cost will be considered as ADDITIONAL LEASE CHARGE and payment shall be due immediately.

## Licenses
Lessee must maintain his/her NYS and TLC drivers' license during the term of this agreement.

## Payments
Uber will pay EZ directly on behalf of the lessee.
Lessee must sign deduction waiver in order to participate in the program, and shall provide EZ with a copy thereof.
Lessee shall not terminate the deduction waiver at any time during the term of this agreement.

## Lease agreement cancellation / termination
It is agreed, understood and acknowledged by both parties that in the event that the Lessee does not keep any of the above requirements or a payment is not made IN FULL for the said automobile (including all additional Lease charges) EZ shall have the right to terminate this contract for breach and immediately repossess the said automobile. Immediately upon termination of this agreement by either party, Lessee shall cease to be authorized to operate the vehicle and shall:

(a)    Immediately pay EZ all amounts owing under this agreement.
(b)    Promptly surrender to EZ the vehicle and all other property previously furnished by EZ to Lessee under this agreement.
(c)    Thereafter, not do anything that would indicate Lessee is an authorized EZ Lessee.
(d)    Permit EZ to enter on Lessee's premises and take possession of the vehicle and all other property provided under this agreement, all without liability to EZ.
(e)    Pay the costs and expenses (including reasonable legal fees) incurred by EZ, if any, in exercising its rights under this agreement including all costs and expenses incurred because of Lessee's failure or refusal to comply with any of the terms of this agreement.

Partial payment shall not be construed as substantial or partial performance.
In the event that the automobile was repossessed and Lessee would like to restore the agreement, it will be EZ's sole discretion to do so. And only after the Lessee paid all open bills and all cost of repossession, including but not limited to: locksmith, towing& storage. As and for liquidated damages, it shall be deemed for purposes of clarity, that Lessee shall be minimally liable in the amount of five hundred dollars ($500.00)

## Title
EZ is the owner of the vehicle and this agreement does not give Lessee any ownership of or title to the vehicle. Lessee's only rights in the vehicle are as provided in this agreement.

## Assignment
Lessee's rights and obligations hereunder are not transferable or assignable in whole or part.  EZ may assign or transfer any of its rights or benefits under this agreement as it may deem necessary or appropriate without notice to Lessee.

## Indemnification and Hold Harmless
Lessee agrees to defend, hold harmless and indemnify EZ, its agents, servants, employees, officers and directors, from and against and for all liability, costs, expenses, claims and damage, including attorney's fees, for which EZ may at any time suffer, sustain or become liable by reason of this agreement or any use, operation, maintenance, manufacture or design of the vehicle..

## Venue and Choice of Law
This agreement will be governed by the laws of the State of New York (exclusive of its conflict of laws provisions). The only venue for any litigation arising under this agreement will be in the courts located in New York County, New York.  **Each party hereto waives all rights to mediation and/or arbitration, and further waives any right to a jury trial.**

## Lease Incentive
**In the end of the Lease agreement, EZ will sell the above vehicle to Lessee for the amount of $1.00 (One dollar)**

**Date: 01-30-2016**

ETERE EMMANUEL
Sat Jan 30 2016 13:58:20
NYC

**ETERE EMMANUEL**
**Social Security #:** ~~████████~~
**Date of birth:** ~~████████~~
**Home address:** 430 SPUR DR N BAYSHORE, NY 11706

**EZ LIVERY LEASING LLC.**
**BY: EREZ DASSA**

# EXHIBIT 6

**John Cammarata**
**Office of Taxi & Limousine commission**
**1 West street**
**Room 136A**
**Mineola,NY 11501**

Dear Mr Cammarata,
 I would like to lodge formal complaint against your officer Mr SODANO BADGE # 102.
 On June 26,2018 at 6:25pm,Mr SODANO Approached me when I was waiting my passenger at Parking
lot of Roosevelt field Mall.
 Mr. SODANO asked what are you doing?,I replied waiting for passenger.
Then He asked ,where are you going?
I said,why are you harassing me?i am not dropping off in Nassau county.
My passenger was about to come out and I was in hurry.
He replied **"SHUT UP AND GIVE ME YOUR LICENSE "**
I was shocked and felt Humiliated. I never expected this behavior from Enforcement officer.
I wanted to bring it in your attention and hope you would take appropriate action against him.Thank
you!

**Ail Jaffar**
**(Complainant)**
**5 Johnell Place**
**FLR 2**
**Glen Cove,NY 11542**

Dean G. Papadeas
11 Scholar Lane
Levittown. NY 11756
386-872-0657


July 18, 2018


Commissioner Gregory May                        RE: Officer Sodano, Badge#102
Nassau County Taxi and Limousine Commission              Ticket#96088
1 West Street      Room 136                               Ticket#96089
Mineola, NY 11501


Dear Commissioner May,

I have not received any reply from you from my letter of June 6, 1018 on a personal matter of import. In case you did not receive it I've enclosed a copy.

Further, I met with Community Service Representative John Cammarata on June 26 as instructed by the summonses. Mr. Cammarata was indifferent to my questions and only quoted the fines. A 50% reduction of a $200 penalty for each ticket.

I will plead not guilty to these unjust tickets as I can prove reasonable doubt.
But the topic I will present to the judge is the un-American and un-ethical procedure of the issuing officer.

Mr. Cammarata said I would be notified within 30 days of a court date.
As of this writing I have not received any notice.

Please advise,


Sincerely,

Dean Papadeas


cc: Community Service Representative John Cammarata

Dean G. Papadeas
11 Scholar Lane
Levittown. NY 11756
386-872-0657

June 8, 2018

Commissioner Gregory May                          RE: Officer Sodano, Badge#102
Nassau County Taxi and Limousine Commission                    Ticket#96088
1 West Street       Room 136                                    Ticket#96089
Mineola, NY 11501

Dear Commissioner May,

Thank you for reading this letter. I stopped by your office this afternoon and was told to put in writing, my issue. It concerns an unsettling encounter with Officer Sodano.

First let me say I am aware of the intense problematic Taxi/Uber situation that's squarely landed unceremoniously upon your desk. Undue and unneeded stress and pressure I'm certain you can do without. And a complaint from an 71 year old full-time Uber driver maybe doesn't help. But I hope this letter does.

Instead of a complaint, I want to apprise you, as the boss, of the unorthodox behavior of one of your workers that was unsettling. Your men are a reflection of you. They represent and follow your rules and directions. So I only hope to report to you how Officer Sodano carried out procedure and if it is something you endorse but should be aware of.

The issue occurred on Monday night, June 4, 10PM. I picked up a young lady at the Roosevelt Field Mall in Garden City. I safely drove her home on a wet dreary moonless night; five miles to a dead-end street in Uniondale. When I U-turned to get back to driving, I slowly passed parked cars at 20mph when suddenly, lights came on behind me from a black unmarked car which flashed red lights. I pulled over, shut the car off, opened all windows and put my hands on the wheel.

The Officer never identified himself as a Taxi Commission cop and stood behind me. As I strained my neck to get a look at him I only heard his soft distant voice:
**"Are you an Uber driver"**. *"Yes, sir"* I answered surprisingly. *How did you know that?"*.
**"I FOLLOWED YOU FROM THE MALL."**

This casually delivered line spooked me, made me feel very uncomfortable. My Cadillac is not the usual Uber car. It has no markings identifying it as such. For all intents and purposes it could easily have been a man picking up his daughter. Sodano asking me if I was an Uber driver is an admission that he couldn't have known— when he decided to single me out and follow me.
So then, what justification was there— to pursue me for so long, at least 20-30 minutes. The same time could be spent chasing the bad guys.

I am a consistent professional safe driver who blindly follows all traffic laws. My livelihood depends on it. You don't become and remain a full-time, highly rated, Uber driver for two and a half years of thousands of safe trips if you get complaints and violations. The officer knew my good record (as he asked for them and read them) way *before* ticketing me.

I saw that as disrespectful. In addition, he read my profile of 4,300 trips that also states something I take great pride and work hard to maintain:

**'No Accidents, No Tickets, No Incidents'**

He took my license and reg. to check me out. My papers are current and in order, as is my clean license. This was just a check, or so I thought. Sodano didn't say much at all. It was a little creepy. No interaction. Nevertheless I was confident to let my record speak for itself and remained silent. He issued two tickets. What for?

### "*No UBER sticker on the windshield*"

I didn't know it was illegal not to display it. After all, my riders know my car from their APP. I showed him my UBER sticker. Officer Sodano told me ignorance is no excuse. I can understand that. But he never asked me about it beforehand. He could just as easily have told me to stick it on *before he ticketed.*

Ticket 2 -*'Operating a Motor Vehicle while using a portable electronic device'* . That was a total surprise assuming I was doing that. I never play with the phone. That ticket infers texting or phoning while driving, something Uber frowns upon.

Following a GPS map is *not* operating a device. You don't operate a map. Mostly every car in the world uses GPS to track where they're going. One glances at GPS like glancing at mirrors. And how would this officer know, or even prove such a fallacious charge from following way behind me in the darkness especially through my tinted windows.

I really felt this was a 'spitting on the sidewalk' summons because there were no infractions over five miles of pursuit.

I have no problem with police issuing tickets, when warranted. The point of all this is the shady personal un-police-like methods and ethics, or lack thereof, from Officer Sodano. His tactics and procedure are something of his own, hopefully NOT departmental and not emblematic of the force he serves.

Such behavior makes one uneasy and begs questions like:
>Can our police now arbitrarily single out a car of their choice, at random, without probable cause, to investigate whatever notion they create?

*And:*
>Can the police now stake out an innocent driver in an unjust surveillance without probable cause? Is this a new law?

*Or:*
>Can an officer under your command randomly pick out a citizen's car, stalk it and follow it endlessly? For what purpose?

I believe this is NOT how cops should behave when executing their duties. I hope not. They have a tough enough job without using unethical methods of their own. I just thought you might like to be apprised of what happened that night with one of your men.

My hearing is set for the 26th where I will ask the judge for a dismissal of these charges.

If you would like me to come see you about this matter, it would be my pleasure.
Call or text 386-872-0657.

Sincerely,

Dean Papadeas
DeanPapadeas@Earthlink.net



Sticker affixed that evening



# Workplace Violence Incident Report

Today's Date __10/9/18__

*Would you like to make this a privacy case*     Yes ☐   No ☒

| | |
|---|---|
| Date of Incident __10/5/18__ | Time of Incident __0:10__   ☒AM ☐PM |

Case Number

Reporting Employee Name __Joseph D. Sodano__

Title __investigator__

Department __Taxi + Limousine Commission__

Phone Number __516 - 571 - 2564__

Supervisor Name __Gregory May__

Phone Number __516 - 571 - 600 5__

Name of victim/injured (if different from Reporting Employee)

Name of Perpetrator (If known/if relevant)
__Dariel Batista__

Title __Uber driver__     Workplace Location __Hicksville LIRR__

| | | |
|---|---|---|
| Is the location a County facility or building? | Yes ☐ | No ☒ |
| Is the reporting employee/injured party/victim able to sign this form? | Yes ☒ | No ☐ |
| Does the allegation involve property damage? | Yes ☐ | No ☒ |
| Does the allegation involve personal injury? | Yes ☐ | No ☒ |
| Were the police or public safety officers called to the scene? | Yes ☒ | No ☐ |
| Was an ambulance called? | Yes ☐ | No ☒ |
| If known, does the incident relate to domestic violence? | Yes ☐ | No ☒ |
| Did the victim/injured party refuse medical aid? | Yes ☐ | No ☒ |

What was the employee doing just prior to the incident?
__Patrolling Hicksville LIRR on foot, checking all__
__taxs, for-hire vehicles, Uber + Lyft vehicles for__
__Proper credentials.__

Name of other identifier or other individuals (e.g. non-employee)
__N/A__

Incident Description (Minimally include names of involved employees, extent of injuries and names of witnesses):

_Attached._

What actions, if any, were taken by the employee, or by another, at the time of the incident?

_Police were called_

Who was notified of this incident?  When was notification made?

_Gregory May_

_Tuesday october 9th_

Signature of Reporting Employee _____

Signature of Injured Party/Victim (if different from reporting employee) _____

Signature of Supervisor of Reporting Employee _____

**PLEASE FORWARD THIS REPORT TO THE OFFICE OF RISK MANAGEMENT AND SEND COPIES TO HUMAN RESOURCES.**

For purposes of this report, all incidents are deemed alleged until such time as a determination upon this complaint may be made.

## Incident Description

*I (Investigator Sodano) approached vehicle with a Florida license plate which I suspected was operating as an Uber vehicle. Driver confirmed he was doing so, waiting to pick up a passenger. I identified myself, explained that we were doing compliance checks of all For-Hire vehicles and Uber/lyft vehicles at the station and needed to see his license, registration and insurance. Driver immediately responded with an attitude and yelling that he's active military showing his military card, reluctant to show his license, which he eventually did, refused to hand over any additional information (I.E. DMV Registration & Insurance). Driver just talked louder and louder not wanting to listen anything I had to say (including that he was violating state law by not having a "Trade Dress"), and threatened to drive off, which I instructed him if he were to do so he would get violations in the mail. At which point he got even louder, I as a result walked away to deescalate the situation, he then got out of his car and attempted to charge at me while my back was turned walking away. Investigator Benedetto then stepped in between us two to avoid a physical altercation, he continued yelling and refusing to listen to reason and threatened to call the cops, which we told him to do so since he was refusing to listen to us.*

*Police responded within 5 minutes all the while he continued yelling, even telling his customer who was in the backseat to cancel the trip because he wasn't going anywhere. Police arrived and told the driver to calm down, that we identified ourselves, we are in uniform and are in a County vehicle, no reason to be agitated, he seemed agitated that the police weren't helping him and eventually got in his vehicle and drove off.*

Joseph D. Sodano

# EXHIBIT 7

IN THE UNITED STATES DISTRICT

COURT FOR THE EASTERN DISTRICT

OF NEW YORK

_____x

EMMANUEL ETERE

       **Plaintiff**

    V                                   17-CV-03113 (AYS)

NASSAU COUNTY, NASSAU COUNTY

POLICE DEPARTMENT, NASSAU COUNTY

TAXI & LIMOUSINE COMMISSION, GREGORY

MAY, OFFICER RYAN FAIS, OFFICER SODANO

       **Defendants**

_____x

### DEFENDANTS' RESPONSE TO INTERROGATORIES

Defendants Nassau County, Nassau County Police Department, Nassau County Taxi & Limousine Commission, Gregory May, Officer Ryan Fais and Officer Sodano, to respond to plaintiff's interrogatories as follows:

1

## GENERAL OBJECTIONS

1. Defendants object to plaintiffs' requests because, and to the extent, they seek documents and/or information protected from disclosure under the attorney-client privilege and/or work-product doctrine.

2. Defendants object to plaintiffs' requests because, and to the extent, they seek documents and/or information that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

3. Defendants object to plaintiffs' requests because, and to the extent, they are overbroad, unduly burdensome and oppressive.

4. Defendants object to plaintiffs' requests because, and to the extent, terms or phrases contained therein are vague, ambiguous or undefined.

5. Defendants object to plaintiffs' requests because, and to the extent, they fail to identify the information or category of information that is sought with reasonable particularity.

6. Defendants object to plaintiffs' requests because, and to the extent, they fail to limit themselves to documents that are in the possession, custody or control of defendants.

7. These General Objections are continuing and are incorporated by reference in each and every response set forth below.

8. By providing the information below, defendants do not in any way waive or intend to waive, but rather intend to preserve and is preserving (a) all objections to competency, relevance, materiality and admissibility of the responses or the subject matter thereof; (b) all objections as to vagueness, ambiguity, or undue burden; (c) all rights to object on any ground to the use of any of said responses or the subject matter thereof, in any subsequent proceedings, including the trial of this or any other actions; and (d) all rights to object on any ground to any request for further responses to these or any other discovery requests involving or relating to the subject matter of these requests.

2

9.     Defendants' responses are based upon information and documents presently known to them. Defendants reserve the right to present at trial additional information discovered from plaintiffs during discovery.

**SPECIFIC OBJECTIONS AND RESPONSES**

**Interrogatory No 1:**

As to the person(s) answering these interrogatories state:

      (a) Name: Ralph J. Reissman and Mary Harkins.

      (b} Title or position: Deputy County Attorneys

      (c) Length of time employed by defendant agency: 17+ years (Reissman), 5 months (Harkins)

      (d) State year by year all other positions, titles or jobs you have held with the Defendant: Reissman: Same title and position for 17+ years. Harkins: same title and position for five months.

**Interrogatory No 2:**

      (a) With respect to Defendant Officer Ryan Fais' stopping of Plaintiff's vehicle on July 14,

2016, please state where you stopped Plaintiff's vehicle. Response: Hook Creek Blvd., Queens County.

      (b) Explain what probable cause you had to stop Plaintiff's vehicle. Response: The license plate which Officer Fais observed at Northbound Green Acres Road, Valley Stream, was covered around the sides of the plate.

      (c) Explain what prompted you to issue a ticket to Plaintiff for "Driving with a Covered

      License Plate". Response: The license plate was covered around the sides of the plate.

      (d) Explain what you meant by "Covered" with reference to a "Covered License Plate". Response: Response: The license plate was covered around the sides of the plate, obscuring the

3

information on the edges of the plate.

(e) Did you conduct a search of Plaintiff's cell phone? Response: Yes.

(f) Did you have a warrant to conduct a search of Plaintiff's cell phone? Response: No, no warrant was required to search plaintiff's cell phone.

(g) Were you trained to seek warrants before searching drivers' cell phones? Response: Officer Fais was trained that there was no warrant requirement to search a FHV driver's cell phone.

(h} Did you see a passenger sitting at the back of Plaintiffs vehicle? Response: Yes.

(i} Did you end the trip conveying this passenger to her destination on Plaintiffs Uber app. Response: No, plaintiff was free to continue driving his passenger to her destination.

(j) Did Plaintiff give you consent to end the trip on his Uber app? Response: No, plaintiff's consent was not needed.

**Interrogatory No. 3**

(a} With respect to Defendant Officer Joseph Sodano, Please state where you

accosted plaintiff on February 17, 2017? Response: Officer Sodano did not

"accost" plaintiff. Officer Sodano observed plaintiff in his FHV in the Norstrom

Parking lot in Roosevelt Field Mall.

(b} Is this place a public arena, open to the public or not? Response: Open to the public.

(c} Please explain why you accosted the Plaintiff, while he was sitting in his

car? Response: Officer Sodano did not "accost" plaintiff. Officer Sodano

issued a ticket to plaintiff for dispatching/allowing the operation of a FHV in

Nassau County without a valid Nassau County Taxi and Limousine

Commission registration.

4

(d} Please explain why you issued two tickets to Plaintiff? Response: One ticket was for dispatching/allowing the operation of a FHV in Nassau County without a valid Nassau County Taxi and Limousine Commission registration, and the second ticket was issued for operating a FHV in Nassau County without a valid hack or FHV driver's license for Nassau County..

(e} Please explain how you knew that Plaintiff allegedly picked up passengers in Nassau County without authorization? Response: Officer Sodano looked at plaintiff's cell phone log.

(f} Please explain if you conducted a search of Plaintiffs cell phone? Response: Yes.

(g} Please explain why you conducted a search of Plaintiffs cell phone? Response: To determine whether plaintiff had transported a passenger in Nassau County without a valid Nassau County license to pick up passengers

(h} Did you need a warrant to conduct a search of Plaintiffs cell phone? Response: No.

(i} Please explain what you found in Plaintiff's cell phone? Response: That plaintiff had transported a passenger in Nassau County.

(j) Is this practice of conducting searches of drivers' cell phones without a warrant standard practice in the Nassau County Taxi & Limousine Commission

(NCTLC)? Response: Yes, this was permitted under regulations at the time of the incident.

(k) Were you trained not to require a warrant before conducting a search of driver's cell phone by your employer? Response: Yes.

## Interrogatory No. 4

(a) With respect to Defendant Gregory May, please explain the policy of your agency (NCTLC) regarding stop and search of FHV drivers. Response: At the time plaintiffs was stopped (in both instances), FHV Drivers without a Nassau County Taxi and Limousine Commission license were subject to stop and search if they were transporting passengers in Nassau County.

(b) Does your agency take into consideration the 4th Amendment constitutional protections of FHV drivers, when they are stopped on Nassau County roads? Response: Yes, all state, local and federal rules and regulations are followed by employees of the Nassau County Taxi & Limousine Commission.

(c) How do you train and instruct your employees and subordinates to conduct stops and searches on Nassau County roads? Response: NCTLC investigators are trained in the field, and they refer to the NCTLC Rules and Regulations (March 4, 2009) when issuing violations. In addition, NCTLC investigators attend a three-week session at the Nassau County Police Academy prior to going

6

out in the field.

(d) Do you train your employees to request a warrant before conducting a search of a

(e) FHV driver's cell phone? Response: No, since no warrant is required by NCTLC

investigators to search a FHV driver's cell phone. NCTLC investigators are

trained in the field, and they refer to the NCTLC Rules and Regulations (March

4, 2009) when issuing violations. In addition, NCTLC investigators attend a

three-week session at the Nassau County Police Academy prior to going out in

the field.

(f) Did you train Officer Joseph Sodano not to request a warrant before conducting

a search of a FHV driver's cell phone? Response: Officer Sodano was trained

that no warrant is required by NCTLC investigators to search a FHV driver's cell

phone. NCTLC investigators are trained in the field, and they refer to the

NCTLC Rules and Regulations (March 4, 2009) when issuing violations. In

addition, NCTLC investigators attend a three-week session at the Nassau

County Police Academy prior to going out in the field.

(g) Was Officer Sodano required to ask for a warrant to search Plaintiff's cell phone for

(h) his Uber trip history? Response: No, since no warrant is required by NCTLC

investigators to search a FHV driver's cell phone. NCTLC investigators are

trained in the field, and they refer to the NCTLC Rules and Regulations (March

4, 2009) when issuing violations. In addition, NCTLC investigators attend a

7

three-week session at the Nassau County Police Academy prior to going out in the field.

(i) How many tickets does your agency issue to FHV drivers on any given day? Response: Defendants object to this interrogatory because the terms or phrases contained therein, i.e., "any given day," are vague, ambiguous or undefined..

(j) Does your agency collect a substantial amount of fines for Nassau County through the implementation of Nassau County's rules and regulations for FHV drivers from outer boroughs? Defendants object to this interrogatory because the terms or phrases contained therein, specifically, "substantial," are vague, ambiguous or undefined.

Dated: Mineola, New York
May 19, 2022

THOMAS A. ADAMS
Nassau County Attorney
Attorney for Defendants

By: /s/ Ralph J. Reissman
RALPH J. REISSMAN
Deputy County Attorney

EXHIBIT 8

TOTAL PAYOUT
## $5.20

Trip Detail                                                    Thu, July 14, 7:31 PM

**Trip Earnings**

Fare                                                                      $8.00 +
Uber Fee                                                                  $2.00
Black Car Fund                                                           -$0.18
Sales Tax                                                                -$0.62

Total                                                                     **$5.20**

                          5 mi 27 s                        0.59 mi



Google

7:31:24 PM
700 Eastside Mall, Jamaica Street, NY 11381, USA

7:45:26 PM
Liberty Ave & 134th St East, Richmond Hill, NY 11419, USA

6486b1b9-42f6-4393-8019-963148630164

# EXHIBIT 9

UNITED STATES DISTRICT
COURT
EASTERN DISTRICT OF NEW YORK