FILED
CLERK
6/20/2025 9:35 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------X

EMANNUEL ETERE,

Plaintiff,

v.

NASSAU COUNTY, et al.,

Defendant.

-----------------------------X

17-CV-3113 (AYS)

June 4, 2024

Central Islip, NY

TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
BEFORE THE HONORABLE ANNE Y. SHIELDS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff: EMMANUEL ETERE, PRO SE
430 Spur Drive North
Bay Shore, NY 11706

For the Defendant: RALPH REISSMAN, ESQ.
Nassau County Attorney's Office
One West Street
Mineola, NY 11501

Court Transcriber: ARIA SERVICES, INC.
c/o Elizabeth Barron
274 Hovey Road
Milo, ME 04463
Aria@leinen.net

Proceedings recorded by electronic sound recording, transcript produced by transcription service

THE CLERK: Etere v. Nassau County, et al.

Please state your appearances for the record.

THE COURT: Let's start with the plaintiff. You could just say your name just on the record.

MR. ETERE: Good morning, your Honor. My name is Emmanuel Etere. I'm the plaintiff in this case.

THE COURT: Good morning. And you are representing yourself, correct?

MR. ETERE: I'm representing myself, yes.

THE COURT: Okay. And I understand you are -- are you a lawyer now?

MR. ETERE: Not yet. I'm still -- I've not done the Bar for quite a while but I plan to do it sometime soon.

THE COURT: Okay, but you are in law school or you finished law school?

MR. ETERE: Yeah, I finished law school a couple of years now.

THE COURT: Okay, very good, okay.

MR. REISSMAN: Good afternoon -- good morning, your Honor. Deputy County Attorney Ralph Reissman, Office of the Nassau County Attorney, for defendants.

THE COURT: Good morning.

Before we get started, we're here to argue summary judgment but I think there was also something on the docket, a motion by the plaintiff for a corrected version of a transcript. I think that's been cleared up. I'll grant that. Has it?

MR. REISSMAN: Yes.

MR. ETERE: Your Honor, I do not agree that it has been cleared up because --

THE COURT: You do not agree.

MR. ETERE: I do not agree because reading through the defendants' memorandum of law, I see a lot of misquotations and misrepresentations. I have here line number 15 on defendants' statement of undisputed material fact. It says, "Plaintiff came out of his car to look and plaintiff agreed with (ui) that plaintiff's rear license plate cover was covering the New York City Taxi and Limousine Commission insignia." It said "plaintiff agreed." That's in the statement of undisputed facts, so that has not been corrected. I never agreed.

Also, page 4 of memorandum of law, the same position was held. "Plaintiff came out of his car to look and plaintiff agreed with (ui)." That's on page 4. So that also is a misrepresentation. I never

agreed.

THE COURT: Let me hear from Mr. Reissman on that.

MR. REISSMAN: Yes, your Honor. I do believe the docket will reflect first that when I filed these papers originally, I relied on the original transcript. However, Mr. Etere subsequently -- prior to my making the motion, Mr. Etere had returned the original transcript with an errata notation, in which he -- in which the transcript said he agreed that the plate was covered, and then he inserted the word "n-o-t." And I believe I -- the docket will reflect that I subsequently filed that correction to clarify that Mr. Etere inserted the "n-o-t."

THE COURT: Okay, all right, well, there you go. Okay, thank you. It speaks for itself. Let's move on to the summary judgment.

MR. REISSMAN: Judge, may we go off the record before we start that?

THE COURT: Sure.

(Tape off, tape on.)

THE COURT: Okay.

MR. ETERE: Okay.

THE COURT: Before you start, before either of you start, this is oral argument on the motions.

This is really just to amplify what's in your papers. I have the papers before me so certainly it shouldn't be more than, you know, say five, ten minutes to a side. So go ahead.

MR. ETERE: Before I start, your Honor, I want to note that the defendants did file a 12(c) motion and they basically contained the same issues, the same argument, and you denied that motion.

THE COURT: That was before discovery.

MR. ETERE: Yeah.

THE COURT: Yes, I know that.

MR. ETERE: Basically, that is what we are back here -- the same issues, so let me start. For my summary judgment motion, there is no issue of material fact that defendants did not witness plaintiff commit any traffic infraction. Yes, plaintiff was parked -- for the second ticket, plaintiff was parked at Roosevelt Field Mall doing nothing, not operating any vehicle. He was just sitting in his car. So there is a requirement for the Fourth Amendment that you have to be witnessed -- the arresting officer has to witness the suspect committing an offense. Plaintiff was sitting down in his car in a public parking lot.

THE COURT: You're talking about -- there are two stops. Which one are you talking about now?

MR. ETERE: I'm talking for the second ticket first.

THE COURT: Okay.

MR. ETERE: Involving Officer Sodano.

THE COURT: The 2017.

MR. ETERE: The 2017. I'm starting with that one first.

THE COURT: Okay, okay.

MR. ETERE: Plaintiff was sitting in his car eating breakfast and waiting for the department store to open at 9:00, so we're talking about 8:40, 8:35, something like that. Plaintiff was accosted by defendant Sodano without witnessing plaintiff doing anything other than eating and drinking coffee. And Sodano demanded for license and registration, and plaintiff asked him what was the problem, what was the issue? Plaintiff said he needed to search -- defendant said he needed to search plaintiff's cell phone, and plaintiff insisted, what is the problem, what happened? And plaintiff said he suspected defendant -- sorry, defendant said he suspected plaintiff of operating a taxi in Nassau County. That is without any -- without plaintiff doing anything, you see?

And he threatened plaintiff that if you don't give me your cell phone, if you don't open your

cell phone, I'm going to have your car towed. And he made as if he wanted to call on his radio for backup because plaintiff was refusing to give it up. And when he said he was going to have plaintiff's car towed, plaintiff had to open his phone and give it to the defendant Sodano.

Defendant Sodano searched plaintiff's phone and he found a trip that emanated from Suffolk County to Nassau. That was the first ticket and this is the first ticket right here, ticket number 63751. This trip emanated from Suffolk County to Nassau County. So for this first ticket, defendants had no power to prosecute this ticket because this ticket emanated from Suffolk County.

THE COURT: That's the first ticket in 2017.

MR. ETERE: In 2017.

THE COURT: And what was the second ticket for?

MR. ETERE: The second ticket was allegedly for -- this is the second ticket for picking up a fare in Nassau County. The trip emanated in Nassau County and ended in Nassau County, so that's the second ticket, you see? So basically, defendants have no right to stop and search plaintiff in a public parking lot. They have no probable cause, none at all. Their

position is not supported by the Fourth Amendment, it's not supported by New York State Constitution. So that is the first point.

THE COURT: What about --

MR. ETERE: For ticket -- the ticket of 2016 by Fais. Defendant Fais stopped plaintiff for having this on his license plate.

THE COURT: When you say "this," -- we have a record here.

MR. ETERE: This is the license plate cover. This is not illegal in the State of New York.

THE COURT: So I want the record to reflect that you're holding up a license plate cover.

MR. ETERE: Yes.

THE COURT: I want to ask Mr. Reissman whether that's something you've seen before, whether there was any discussion as to whether that was the actual license plate cover at the time, whether that was used at deposition or anything like that?

MR. REISSMAN: Can you show me the pictures?

MR. ETERE: Yes. This is the picture of the license, of the license plate cover around it.

THE COURT: And that picture is from when?

MR. REISSMAN: From our discovery.

THE COURT: Okay.

MR. REISSMAN: He had supplied this in discovery as part of his motion.

THE COURT: Okay. Let's just use the picture then.

MR. REISSMAN: Yeah.

THE COURT: Because I'm not going to use the exemplars as the actual evidence.

MR. ETERE: Okay, let me --

MR. REISSMAN: You have a picture?

MR. ETERE: Yeah. This is the picture of the license plate and the license plate cover around it.

THE COURT: And that was produced during discovery.

MR. ETERE: Yes.

THE COURT: Was that -- is it -- let me ask Mr. Reissman, was that used at a deposition and was it agreed upon that that was the condition of the license plate cover at the time of the 2016 ticket?

MR. REISSMAN: That -- Mr. Etere turned those -- turned in that and other photographs with his original complaint and subsequently in discovery papers. However, I cannot certify that that is exactly what Officer Fais, F-a-i-s, saw in 2016.

THE COURT: Okay.

MR. REISSMAN: But Mr. Etere represents that. Then it's up to the Court to make a finding of fact.

THE COURT: Okay, thank you.

MR. ETERE: Your Honor, this is a violation, red-light camera violation of the same license plates from 2016. This is an original copy from the City of New York --

THE COURT: Did you produce that during discovery?

MR. ETERE: Okay, I did produce that.

THE COURT: Yes?

MR. ETERE: Yes, I did.

THE COURT: Did you discuss -- let me ask Mr. Reissman, was it discussed at a deposition, anything like that?

MR. REISSMAN: May I see the picture please.

MR. ETERE: Yes. This is an original copy of a red-light camera violation with the same license.

MR. REISSMAN: Yes, I did see this. It was produced in discovery, yes.

THE COURT: Okay.

MR. ETERE: Okay, all right. So basically, for the two points that I've raised, the 2017 ticket and the 2016 ticket by defendant Ryan Fais, there is no

probable cause for stopping and issuing tickets, prosecuting plaintiff in Nassau County court. That case for the 2016 ticket was dismissed and this -- this is --

THE COURT: So the 2016 was dismissed and that -- it's my understanding that the officer didn't show up so that ticket was dismissed. The 2017 tickets, those are the ones where there was a hearing and there were violations found, right?

MR. ETERE: Yes.

THE COURT: And that's where the 600 comes from.

MR. ETERE: Yes.

THE COURT: Got it.

MR. ETERE: For those two issues, I have also claimed malicious prosecution.

THE COURT: Yes.

MR. ETERE: Because for the 2017 ticket, one of the trips emanated from Suffolk County, so you don't even -- they don't even have jurisdiction to prosecute the Suffolk County ticket, the Suffolk County trip. They have no jurisdiction for that, you see? So I was prosecuted and found guilty, so I don't agree that they have jurisdiction for that ticket at all. For the two tickets, they have no jurisdiction because the case is

based on a false premise.

THE COURT: Okay.

MR. ETERE: Based on the false premise. I was parked in a public parking lot, doing nothing but eating and drinking coffee. So that -- there is no probable cause to accost me to search my phone.

THE COURT: All right. Let me -- let me just ask you about damages on the record. Obviously, your damages that you're claiming is the $600 on the ticket if you had to pay that. There was a lost fare of about $24. What are your other damages that you're claiming in this lawsuit? Tell me amounts that you're claiming and tell me what you have to support that.

MR. ETERE: Well, I'm claiming punitive damages because this is egregious conduct. It is a pattern by Nassau County and law enforcement agents to stop people arbitrarily. So there should be punitive damages for egregious conduct. And there is also -- I'm claiming also for pain and suffering, yes, because I have always tried to be law-abiding, never doing anything outside of the law. And for me to have an encounter with law enforcement, it caused me pain and suffering.

THE COURT: Okay.

MR. ETERE: Yes.

THE COURT: All right, let me hear from --

MR. ETERE: So I have one or two more points and then -- okay. Okay, I think I have summarized --

THE COURT: Okay.

MR. ETERE: -- summarized it.

THE COURT: Let me hear from the County. Can you address first probable cause and if you're making a qualified immunity argument, address that as well if that's something that you're making.

MR. REISSMAN: Yes, your Honor. In both -- in the case of the 2016 ticket and the two tickets in 2017, both officers had probable cause to make their respective -- issue their respective tickets based on -- the first case was the covered license plate, and Officer Fais issued a ticket based on his observation that the New York City Taxi and Limousine Commission insignia was covered up, and that was the reason the ticket was issued. And we could get Officer Fais in here for a trial. I don't think that's necessary, although Mr. Etere contests that the license -- he says the plate was not covered, so we have a he-said-she-said situation but I'm confident that Officer Fais will testify that that is exactly what he saw, a covered license plate.

And secondly, on that first ticket, as to

qualified immunity, based on his observation, he reasonably believed that a violation did occur and therefore, he's protected from civil suit by qualified immunity, in which a reasonably competent officer could come to the conclusion that he did not violate clearly-established law. And even if there is a question as to his observation, he is also entitled to what is called arguable probable cause. Arguable probable cause also entitles him to qualified immunity because officers of reasonable competence could disagree whether a ticket should have been issued based on Officer Fais' observation of the license plate cover.

THE COURT: Is his observation of the license plate written on the ticket?

MR. REISSMAN: Let's take a quick look. Thank you, your Honor.

THE COURT: I'd also ask if he testified to that or he was deposed about that or an affidavit about that.

MR. REISSMAN: Yes. Let's see. Let's see. This is the 2016 ticket.

MR. ETERE: This is his sworn ticket -- sworn statement and he said, "I did observe the above defendant operating a motor vehicle on a public roadway and disregard the following vehicle and traffic law

infraction: F3110050G8VTF4021, covert license plate," in brackets.

THE COURT: Okay, thank you. Thank you for helping, okay.

MR. REISSMAN: Yes, thank you. And that is exactly what Officer Fais, if brought in to testify under oath, would say, that his observation led him to believe probable cause existed or at least arguable probable cause existed to issue the ticket.

THE COURT: He indicated that on the ticket, that that is what he observed. What about the 2017 tickets and probable cause there?

MR. REISSMAN: Well, the 2017 tickets, as Mr. Etere says, he was sitting in the parking lot. Now, it seems that Mr. Etere believes that the officer had to observe Mr. Etere driving his Uber car in various parts of Nassau County, in which he did not have a valid license -- for-hire vehicle license. What that means is that Officer Sodano would have had to be in his car driving around, following Mr. Etere and observing him go from county to county or from point to point in Nassau County.

THE COURT: But what did he observe?

MR. REISSMAN: He observed the cell phone, which showed the record of the trips.

THE COURT: Yeah, but what did he observe that caused him to go up to the car to begin with?

MR. REISSMAN: That -- let's see, what did he observe? I guess he observed Mr. Etere's car with a "T" license plate, which means for-hire vehicle. And as a for-hire vehicle --

THE COURT: Okay. So did he -- was he deposed? Did he say under oath that he observed a for-hire vehicle parked in the parking lot?

MR. REISSMAN: Mr. Etere was advised that he could take the depositions of the officers. However, when he was -- Mr. Etere was told he would have to pay a lot of money for the depositions, he did not proceed to take the depositions. However, the tickets themselves -- yes. Ticket number 63751 issued February 17th, 2017 states that the violation was for dispatching/allowing the operation of a for-hire vehicle in Nassau County without a valid Nassau County Taxi and Limousine Commission registration. And the relevant data was visible on the park -- that the driver was parked in Nordstrom parking lot of Roosevelt Mall.

Driver stated he had worked today, Mineola to West Hempstead, per trip data. That per trip data is evidenced on the cell phone. That provided probable

cause for Office Sodano to conclude that Mr. Etere had driven passengers in Nassau County without a valid Nassau County license.

THE COURT: But you're saying -- you're saying that the trip data provided probable cause for the officer to ask for the trip data?

MR. REISSMAN: No. Well, Mr. Etere did not address the question of the Fourth Amendment -- the officers in both cases asking to see the cell phone.

THE COURT: I mean --

MR. REISSMAN: But --

THE COURT: I'm focusing on the 2017.

MR. REISSMAN: Yes, 2017. So I just told you --

THE COURT: He's approached in a parking lot, right?

MR. REISSMAN: Yes.

THE COURT: By the officer.

MR. REISSMAN: Yes.

THE COURT: So why does the officer approach him at all?

MR. REISSMAN: As I said, Mr. Etere's car was apparently a for-hire vehicle and as a for-hire vehicle, the officer --

THE COURT: Okay. How does he know it's a

for-hire vehicle?

MR. REISSMAN: Well, I would ask Mr. -- normally, you have a "T" on a license plate.

Mr. Etere, could you please describe for the judge that part?

MR. ETERE: Okay.

THE COURT: Yeah. I'm --

MR. ETERE: Okay. The license -- my license plate had a "T." Look, this is a "T" and a "C." That tells anyone that this is a for-hire vehicle.

THE COURT: Okay.

MR. ETERE: Okay. So this car is parked in a parking lot.

THE COURT: Okay.

MR. ETERE: It was not --

THE COURT: So the officer sees the "TC."

MR. ETERE: The license plate.

THE COURT: Which shows that it's a for-hire vehicle. Let me ask this: At that time to have a "TC" license plate, you're registered with the Taxi and Limousine Commission?

MR. ETERE: In New York City.

THE COURT: In New York City at that time.

MR. ETERE: In New York City.

THE COURT: And that's what that shows.

MR. ETERE: Yes.

THE COURT: Okay.

MR. ETERE: And when I asked Mr. Sodano, did I do anything wrong, what is the problem, he said, you have a license plate, this license plate. I said, what is your standard for stop and search?

THE COURT: You answered my question. My question was about the license plate and that's when he saw. And then he goes over to the car and then he asks you to say what your trip history is, right?

MR. ETERE: Yeah.

THE COURT: Okay.

MR. ETERE: And he asked me for my cell phone --

THE COURT: Okay.

MR. ETERE: -- just because he saw my license plate.

THE COURT: Understood, all right.

MR. ETERE: Your Honor --

THE COURT: Let me just -- hold on. I want to focus on what I want to focus on.

MR. ETERE: Okay.

THE COURT: Let me -- let me ask the County about qualified immunity with respect to the 2017 tickets.

MR. REISSMAN: Okay. Just before I get -- I want to round that out on the second ticket, which was ticket number 63752, where the violation was for operating a for-hire vehicle in Nassau County without a valid hac, h-a-c, or a for-hire vehicle driver's license. And the summary was, visible on approach, parked in Nordstrom parking lot in Roosevelt Mall. Driver stated he had worked today, Mineola to West Hempstead per trip data on cell phone. Of course, Mineola and West Hempstead are in Nassau County.

THE COURT: Right, and the was the -- that was the state of the law in Nassau County at the time.

MR. REISSMAN: Correct.

THE COURT: Right?

MR. REISSMAN: Correct.

THE COURT: Okay.

MR. REISSMAN: Now, those -- those two descriptions exactly state the basis for -- provide the probable cause for Officer Sodano to reasonably believe that he observed plaintiff in violation of the law as it existed at that time. Therefore, number one, there was probable cause to issue the tickets and number two, the officer is entitled to qualified immunity because he had probable cause or at least arguable probable cause based on his reasonable belief that plaintiff had

violated the vehicle and traffic law. So --

THE COURT: Right, and the issue is whether those were objectively reasonable, right? It's what did he believe and were they objectively reasonable. That is the issue on qualified immunity, whether it's objectively reasonable or objectively unreasonable, which is a little bit different, you know, as everybody knows, from the initial finding of whether or not there was probable cause, right?

MR. REISSMAN: Yes. However, your Honor, as far as objective, you can't be -- you can't be more objective than looking at the trip data.

THE COURT: No, I understand that but he didn't get that until he had approached the car, right? But he approached the car. The car did have, you know, a "TC" license plate.

All right, let me take a short break. It's my intention to rule on this but let me take a little break. You can continue to talk to each other.

MR. REISSMAN: Thank you, your Honor.

MR. ETERE: Your Honor, you made a notation before -- I want to address that before we take a break.

THE COURT: Mm-hmm.

MR. ETERE: The first ticket issued by

Fais --

THE COURT: Yes.

MR. ETERE: That ticket had no notation of what the officer saw.

THE COURT: No, I understand that.

MR. ETERE: The statement -- it's one statement that he made months later that he saw something, but the ticket he gave, there is no notation that he saw anything.

THE COURT: But the ticket was for something else, right?

MR. ETERE: Yes.

THE COURT: I understand. The ticket was for what, operating -- what was that first ticket for?

MR. ETERE: He said here covered license plate.

THE COURT: So it is a covered license plate.

MR. ETERE: Yes.

THE COURT: The first one.

MR. ETERE: He said -- he didn't make any notation --

THE COURT: Okay.

MR. ETERE: -- that he saw it.

THE COURT: That wasn't your driving in

Nassau, that was a ticket for a covered license plate.

MR. ETERE: Covered license plate in Queens.

THE COURT: And that was ultimately dismissed because he didn't show up at the hearing.

MR. ETERE: Yes.

THE COURT: Okay.

MR. REISSMAN: Your Honor, one other point which may factor into your Honor's analysis: When Mr. Etere mentions Suffolk in Queens, the vehicle and traffic law in New York State provides jurisdiction for a Nassau County officer in this case or any officer in any contiguous county to go into that county and make an arrest for a violation, in this case that he witnessed in Nassau County, or in this case, witnessed in Queens on the trip data, but the violation occurred in Nassau County. So the contiguous --

THE COURT: That would be the first one but for the second one, we're talking about Suffolk and Nassau being contiguous.

MR. REISSMAN: Yes, thank you, your Honor.

THE COURT: All right, short break.

MR. REISSMAN: Thank you, your Honor.

(Tape off, tape on.)

THE COURT: -- and your argument this morning, I am prepared to put my decision on the

record. So plaintiff alleges that his constitutional rights were violated as a result of two separate and unrelated interactions with law enforcement, one with defendant Nassau County Police Officer Fais and the other with Nassau County TLC Enforcement Officer Sodano. The interaction with Fais took place on July 14th, 2016 and resulted in the issuance of one ticket. The interaction with Officer Sodano took place on February 17th, 2017 and resulted in the issuance of two tickets.

During both incidents, the defendants opened the ride-share app on plaintiff's phone to search his trip history to determine whether plaintiff was operating in Nassau County without the proper registration at the time. Plaintiff did not consent to the searches of his trip history and there were no warrants. The 2016 ticket was dismissed when Fais did not appear at that hearing. The 2017 tickets resulted in a hearing after which the tickets were sustained as proper and plaintiff was fined $600. Payment of this fine was stayed pending the outcome of this action.

This Court has previously granted a motion to dismiss against higher-acting officials May and Rider. There's been no pleading of any claim against these two. The claims against Fais and Sodano

proceeded to discovery, which has now concluded, and the case is presently before the Court on a motion for summary judgment.

Before the Court now is the deposition of the plaintiff, exhibits, statements made in the tickets, as well as the parties' papers in support of and in opposition to summary judgment. Plaintiff claims that his Fourth and Fourteenth Amendment rights were violated as a result of the two stops and searches of the trip history of his ride-share app in 2016 and 2017. It is clear that the traffic stops must comport with the requirements of the Fourth Amendment. Reasonable suspicion of a traffic violation evaluated from the perspective of a reasonable officer under the totality of the circumstances is a sufficient basis for law enforcement officers to make short traffic stops.

The Court holds that the evidence shows that Fais pulled over plaintiff because he observed an obscured license plate. Specifically, the NYC TLC insignia was obscured. This created probable cause to stop plaintiff's vehicle. Therefore, there's no constitutional violation with respect to the stop of plaintiff's vehicle in 2016.

The Court also holds that there was probable cause with respect to the interaction that took place

in 2017. That stop took place in a parking lot in Nassau County. Sodano saw the plaintiff had an NYC TLC license plate. Sodano approached plaintiff's car, asking if he had a license to pick up customers in Nassau County. There was probable cause at that time to believe plaintiff was operating a for-hire car, in violation of Nassau County law at the time.

Probable cause also required dismissal -- requires dismissal of plaintiff's claims of malicious prosecution. Plaintiff's malicious prosecution claims with respect to the 2017 tickets must also fail because those proceedings did not terminate in plaintiff's favor. The state law claim of interference with contract must also be dismissed on summary judgment because the officers had probable cause to stop plaintiff's vehicle, and there can be no claim that the car was stopped to interfere with any ride that he agreed to.

Even if there was not probable cause for either stop or to search the trip history of plaintiff's ride-share app, the Court holds that all the constitutional claims, either of the 2016 or 2017 incident, are barred by the Doctrine of Qualified Immunity. Qualified immunity is properly granted on a motion for summary judgment unless an officer's actions

violated clearly established rights of which an objectively reasonable official would have known. An officer's entitlement to qualified immunity depends on the reasonableness of the officer's action. The questions before the Court on qualified immunity analysis are, what was the officers' beliefs and were the beliefs objectively reasonable?

As to standards for qualified immunity, the Court refers to -- and I'll just cite two cases. There are many cases for these statements. One I'll cite is Jones v. Truvig (ph), and that's at 963 F.3d 214. That's a Second Circuit case from 2020. I'll also cite Alli v. City of New York, and that's 2023 W.L. 6393403, and that's a Southern District case from 2023.

To be clear, a defendant officer is entitled to qualified immunity if it was not objectively unreasonable for him to believe his acts were lawful. The question is whether it was clearly established that the defendants' acts violated the Constitution. To determine whether a right is clearly established, the Court must inquire if no reasonable competent officer could determine that their acts were reasonable. A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.

Here, the Court cannot find that every reasonable officer would have understood that it violated the Constitution to stop plaintiff's car on either occasion that forms the basis of his complaint. In 2016, plaintiff was pulled over for the obscured license plate, and in 2017, he was approached because he had an NYC TLC license plate and appeared to be parked and waiting for a fare in Nassau County, where at the time, the officer reasonably believed he was doing business in violation of then in effect local law, nor can the Court find that every reasonable officer at the time of either the 2016 or the 2017 search would have understood that the search of a for-hire driver's app to determine trip history under the circumstances here violated the Constitution.

The Court also dismisses the state law claims on the basis of qualified immunity, which are guided by the same standards as federal law. In sum, the Court holds that the defendants are entitled to summary judgment, dismissing all of plaintiff's constitutional and state law claims, and that foreclosed the case.

We will put an order on the docket by the end of the day today. Thank you both for appearing and litigating.

MR. REISSMAN: Thank you, Judge.

* * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON June 6, 2024